**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Larry E. ROSSON, Defendant-Appellant. No. 28953.**

United States Court of Appeals, Fifth Circuit.

April 5, 1971.

Rehearing Denied May 4, 1971.

Barry Hess, Mobile, Ala., for defendant-appellant.

C. S. White-Spunner, Jr., U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before RIVES, WISDOM and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Larry Rosson was convicted by a jury of two offenses arising from robbery of a bank at Spanish Fort, near Mobile, in South Alabama—robbery in violation of 18 U.S.C. § 2113(a), and the use of a dangerous weapon in the commission of the robbery in violation of 18 U.S.C. § 2113(d). He was sentenced to concurrent terms of twenty and twenty-four years. On this appeal he contends that there were various errors in the conduct of the trial, and that an eleven month delay between indictment and trial denied him the right to a speedy trial. We affirm, except that the sentence must be vacated and the case remanded for resentencing.

### 1. Alleged trial errors

The bank was robbed by two armed men disguised in face masks and hard hats. On-the-scene witnesses were unable to identify them. At Rosson's trial two other participants in the robbery scheme, Robert Hayes and Patsy Faircloth, testified for the government. If believed by the jury, their testimony overwhelmingly established Rosson's participation in the robbery. Their testimony, taken together, described in detail the planning and execution of the robbery scheme, which involved a number of people; the sources of guns, automobiles, and masks used; the arrangements for getaway; the actual getaway (involving three different cars and both Faircloth and Hayes as drivers); the di-

vision of the loot; and payment to Hayes of $2,500 by Rosson pursuant to a prior arrangement. Neither Hayes nor Faircloth testified to seeing the actual commission of the holdup, but they described in numerous aspects Rosson's participation in the scheme. Their testimony was cross-corroborative in a multitude of ways. It was corroborated by independent evidence as to several significant details.[1]

Rosson attacks as a violation of due process the established rule in the federal courts that one may be found guilty on the uncorroborated testimony of an accomplice,[2] emphasizing that in this instance both Faircloth and Hayes, as a result of plea bargains, either expected or had received benefits in return for their testimony. We need not reach the question imposed by appellant, because, as we have set out above, there was ample corroboration of the accomplice testimony.

Also with regard to the plea bargaining matter, evidence was adduced that the United States Attorney had agreed to make to the court certain recommendations for sentences to be given Faircloth. While questioning Faircloth in the presence of the jury, the trial judge made clear that it was for him to make the determination of whether Faircloth would be dealt with leniently. Later, in his charge, the court instructed the jury that the United States Attorney's recommendation was not binding on him. Rosson claims that this instruction was error.

■■ The jury is entitled to consider and evaluate the interest that a witness may have as a consequence of a plea bargain. *See* United States v. Vida, 370 F.2d 759, 767 (6th Cir. 1966), cert. denied 387 U.S. 910, 87 S.Ct. 1695, 18 L.Ed.2d 630 (1967). If the defense relies upon the existence of the plea bargain to attack the credibility of the witness, it is not then entitled to preclude the jury from being apprised of additional matters relevant to the bargain so as to leave an incorrect inference that the witness has made a better bargain for himself (i.e., a sentence already agreed upon, rather than a mere recommendation) than in fact he has made.

Rosson contends the Court erred in permitting the government to elicit from Hayes, on redirect, certain testimony concerning plea bargain negotiations which improperly tended to bolster his testimony. The contention is twofold: that it was improper to bring out that Hayes made the plea bargain on advice of his attorney, and that it was error to allow Hayes to testify as to specific statements made to him by his attorney.

On cross of Hayes the defense had gone fully into minute details of plea bargain negotiation and in a series of questions had elicited from Hayes that he did not himself make the plea bargain with the United States Attorney but that his attorney entered into it for him, that his attorney had advised him on the matter and recommended to him what to do, that he [Hayes] then volunteered to testify, and his attorney then entered into the agreement for him with Hayes' knowledge and consent.

---

1. Faircloth's description of the masks, which she said that she made, was consistent with the description of them by bank employees, as was her description of the hard hats and the colored shirts worn by the bandits. She told of participating in the theft of the getaway car from a location described by the owner as the location from which it was stolen. She generally identified a location as being the place at which the three bandits abandoned the getaway car and jumped into her car. It is in the area where the getaway car was found by officers. Bank employees told of putting money in pillow slips carried by the bandits. Faircloth told of the men getting into her car with pillow slip bundles. The description of the division of the loot on the day of the robbery corresponds closely with the amount of money which the bank found to have been taken.

2. *E. g.* Gradsky v. United States, 373 F.2d 706, 709 (5th Cir. 1967) and cases there cited.

■ Thus, as to appellant's first contention, the defense already had brought out on cross that Hayes had acted on his attorney's advice. As to the second aspect, Hayes was allowed to answer, over objection, an inquiry as to what his attorney had told him "concerning any testimony that you [Hayes] might give" pursuant to the government's proposal of a plea bargain. The answer was "He came out and told me, he says 'I will advise you on what to do, but it is up to your decision. They are trying you for this.' He said, 'I don't feel like you deserve to be tried for this. You didn't have that much to do with it.'" The quoted answer was not responsive, but there was no motion to strike it or for an instruction that the jury disregard it. If there was error, it was not reversible.[3] In fact, to some extent the statement tended to show Hayes not credible—his own testimony already had revealed that his participation in the robbery scheme was much more extensive than the *de minimis* characterization allegedly given by the lawyer.

## 2. Speedy trial

Eleven months elapsed between appellant's arrest and his trial. We consider this delay in the light of the interests which the Supreme Court has recognized to be the concern of the Speedy Trial Clause:

■ to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.

Smith v. Hooey, 393 U.S. 374, 378, 89 S. Ct. 575, 577, 21 L.Ed.2d 607, 611 (1969); United States v. Ewell, 383 U. S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627, 630 (1966).

Rosson, together with Faircloth, Hayes and Parker, was indicted on November 27, 1968. He was arrested around December 3, secured counsel sometime prior to December 10, and was arraigned on December 30. At the time of arraignment he filed his first (and only) motion for a speedy trial, asserting that he was unable to make bond. He also moved to sever his case from that of all other defendants, on two grounds—first, that Rosson probably would not testify because of prior convictions, that Hayes had confessed, and that Hayes' testimony and confession would be prejudicial; and, second, that there had been so much publicity concerning the codefendants that they had become notorious, and it would prejudice Rosson to be tried with them.

During January the State of Alabama revoked Rosson's parole because of the federal arrest, and the federal authorities surrendered him to Alabama to complete his state sentence.

The next criminal trial term was February 3–14. The court did not set the trial of any of the four co-defendants for that term.

In mid-February Rosson filed a motion to dismiss for want of speedy prosecution. In late February the court granted Rosson's previously filed motion for a severance from all other defendants. In March the severance order was amended to sever only Hayes, on a showing by the government that Hayes was the only defendant who had confessed. On May 9, Rosson filed another motion to sever, this time from Parker, on the ground that Parker had just been convicted on another bank robbery charge and arrested in Mobile on a charge of burglarizing a store, all with great attendant publicity which would be prejudicial to Rosson should the two be tried together. This motion was denied.

Rosson's trial, scheduled for June 3, was passed over. Hayes was put to trial during the first week of June. In mid-trial, with the knowledge of the court,

---

3. In subsequent questions the government did elicit the subject matter of the attorney's recommendation—that he advised Hayes to testify for the government and to tell what he knew about the case. Those questions were not objected to.

he entered into a plea bargain [3A] and a mistrial was declared.

On June 24, having completed his Alabama sentence, Rosson was released from state to federal custody. Promptly he filed another motion to dismiss the charges, adding the ground that until Hayes' trial the government had been unable to make out a prima facie case, and that as a result of delay it had, at Hayes' trial in June, obtained the benefit of Hayes' testimony.

The case against Rosson, Faircloth and Parker was given a trial date of September 15. It was passed by the court, over Rosson's objection, because Faircloth failed to appear, and her bond was forfeited. On October 1, Rosson filed another motion to dismiss the charges, setting out the same grounds as before and adding the fact of the September 15 continuance, plus allegations that at the September term the court had tried cases of a less serious nature, cases of persons in custody of other charges, and cases of persons out on bond. In November the court severed Parker's case. At trial time, November 15, the court denied Rosson's October 1 motion to dismiss. It severed Faircloth's case pursuant to a plea bargain. She and Hayes testified against Rosson, and he was convicted.

The major thrust of appellant's argument relates to the ground asserted in his motions to dismiss filed on June 24 and October 1, that initially the government did not have a prima facie case against him and that it employed the period of delay to make plea bargains with Hayes and Faircloth, whose testimony then was used to convict him. This argument misconceives the scope of prejudice against which the Speedy Trial Clause has been construed to protect.

If delay results in an impairment of the accused's right to defend himself at trial, the third interest referred to in Smith v. Hooey and United States v. Ewell, a violation of the Speedy Trial Clause may occur. In Dickey v. Florida, 398 U.S. 30, 38, 90 S. Ct. 1564, 1569, 26 L.Ed.2d 26, 32 (1970), the Court stressed that the pendency of the Florida charges for several years resulted in an abundance of

actual prejudice to petitioner in the death of two potential witnesses, unavailability of another, and the loss of police records.

But we think that, in speaking of "the possibilities that long delay will impair the ability of an accused to defend himself," Smith v. Hooey, *supra*, 393 U.S. at 378, 89 S.Ct. at 577, 21 L.Ed.2d at 611, United States v. Ewell, *supra*, 383 U.S. at 120, 86 S.Ct. 773, 15 L.Ed.2d at 630, by virtue of the fact that "evidence and witnesses disappear, memories fade, and events lose their perspective," Smith v. Hooey, *supra*, 393 U.S. at 380, 89 S.Ct. at 578, 21 L.Ed.2d at 612, Dickey v. Florida, *supra*, the Court has manifested its concern for protection of the accused's ability to present the best defense he can muster, and not with whether the delay enables the prosecution to assemble a case. The minimization of delay between the time of charging or arrest and the time of trial is a high priority goal of the criminal process in general and the Speedy Trial Clause in particular, especially with respect to the defendant held in lieu of bond. But the government is not, by the Speedy Trial Clause, denied the benefit of reasonable delays necessary to strengthen the evidence available at the time of indictment sufficiently to make out a prima facie case at trial. United States v. Kaufman, 311 F.2d 695, 697–698 (2d Cir. 1963); *see* United States v. Brown, 188 F.Supp. 624, 626 (S.D.N.Y. 1960); *cf.* United States v. Ewell, *supra* 393 U.S. at 120, 89 S.Ct. 575, 15 L.Ed.2d

**3A.** We use the term "plea bargain" in a generic sense. Perhaps "bargain" would be a better term. The bargain appears to have been that the government would dismiss charges against Hayes arising from the Spanish Fort robbery and two other robberies, in exchange for his testimony in all these robbery cases.

at 630–631.[4] Although one court of appeals has intimated the contrary, United States v. DeLeo, 422 F.2d 487, 494–495 (1st Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970), we think that a practical recognition of the role that plea bargaining plays in the criminal process compels the conclusion that building a case by plea bargaining with accomplices should be treated no differently than acquiring other types of evidence. Accordingly, we conclude that a reasonable delay which enables the government to accumulate the evidence necessary to make out a prima facie case does not prejudice the accused by impairing his "ability * * * to defend himself."

As we have pointed out above, the Supreme Court, in *Smith* and *Ewell*, has recognized three interests to be the concern of the Speedy Trial Clause. While the greatest focus has been upon impairment of the accused's ability to defend himself, the courts have not limited their consideration of prejudice to this interest.[5] Thus, Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L. Ed.2d 1, 9 (1967), predicated the finding of the denial of the right to a speedy trial on the consequences of prolonged pendency of the charges. The North Carolina procedure scrutinized in that case did not result in pretrial detention. The opinion did not intimate that the holding was based on any particularized showing that the accused's ability to defend himself might be impaired. The procedure was held to violate the Speedy Trial Clause because

> pendency of the indictment may subject [the defendant] to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the "anxiety and concern accompanying public accusation," [citing *Ewell*] the criminal procedure * * * in this case * * * clearly denies petitioner the right to a speedy trial. * * *

Klopfer v. North Carolina, *supra*, at 222, 87 S.Ct. at 993, 18 L.Ed.2d at 7.

The record in this case does not disclose such infringement of these other interests protected by the Speedy Trial Clause as to make out a violation of the right. As we read *Klopfer*, a claim of prejudice to the interest of minimizing "anxiety and concern accompanying public accusation" must be supported not only by a showing of the

---

4. Both the ABA Minimum Standards on Criminal Justice relating to Speedy Trial, § 2.3(d) (i), and also § 5(c) (i) of the recently promulgated Second Circuit Rules Regarding the Prompt Disposition of Criminal Cases, recognize that delays required to obtain evidence necessary to the prosecution's case are legitimate.

However, both sets of rules stress that the delay must be of reasonable duration and that the prosecution must exercise due diligence to acquire the requisite evidence. We do not, by permitting reasonable delays to secure evidence, cast our blessing on prosecutorial tarrying, or upon otherwise justifiable but unduly protracted investigations while the accused remains in jail, unable to make bond.

5. For example, Reece v. United States, 337 F.2d 852, 853 (5th Cir. 1964) decided prior to *Ewell*, and *Smith*, found no violation because a four month delay "was not so prolonged as to be *per se* unrea-

sonable; *nor* has there been any suggestion that the delay was purposeful or oppressive *or* that it adversely affected appellant's defense * * *" (emphasis added in part). Bradford v. United States, 413 F.2d 467, 470 (5th Cir. 1969), decided after *Ewell* and *Smith*, held that the delay did "not appear to have been unnecessary or unreasonable. * * * [T]here was no showing of any prejudice *or* that the delay was improperly motivated." (emphasis added). In United States v. Williams, 416 F.2d 4, 9 (5th Cir. 1969) cert. denied, 397 U.S. 968, 90 S.Ct. 1008, 25 L.Ed.2d 262 (1970), the court, in rejecting the claim, stressed "the particular circumstances * * * that most of the delay was due to the lack of a regular judge in the district." Thus, these decisions do not hold impairment of the ability of the accused to defend himself to be a *sine qua non* of a violation of the right to a speedy trial.

stigma which normally accompanies public accusation but also by some demonstration that pendency of the criminal charges was prolonged without cause for an unreasonably long or indefinite period of time, and that there was no expectation that the merits would be concluded with reasonable promptness either by way of litigation or dismissal. We do not attempt to pinpoint the scope of this interest. But we are clear that the delay suffered by Rosson did not result in prejudice to this particular interest.

■ Nor are we able to say that appellant suffered prejudice in the form of "undue and oppressive incarceration prior to trial." A key inquiry in this regard is whether he was held in lieu of bond.[6] Part of Rosson's incarceration —during December, 1968 and early January, 1969 and from late June, 1969 until November—was due to an inability to make the federal bond. Between these two periods his detention was by the State of Alabama and was unrelated to his inability to make federal bond. Although Smith v. Hooey makes clear that one sovereign may not wait however long it wishes to put a defendant to trial on the mere ground that he is in the custody of another jurisdiction, we have no doubt that, on the facts of this case, the approximately five months spent in the Alabama jail plus the approximately six months in federal custody, do not amount to undue and oppressive pretrial incarceration.

Bearing on our appraisal of all the facts, as measured against the interests of the defendant, is his own partial responsibility for what occurred. He was entitled to seek a severance. But, having secured it, barring special circumstances the sequence of separate trials was in the discretion of the trial court. Byrd v. Wainwright, 428 F.2d 1017 (5th Cir. 1970).

It is apparent that Rosson sought, by the combination of motions for severance and a motion for speedy trial,[7] to be tried both separately from and ahead of the other defendants. The defendant in that preferred position would have the best chance that no other defendant would testify against him, that no plea bargain had been made by any defendant with a trial calendared for a later date. Rosson's desire is more clearly silhouetted when it is recalled that visual identification of the two masked robbers was predictably difficult (and, as it turned out, impossible).

Rosson's first motion for severance had put the court on notice that he claimed there was pervasive publicity concerning all other defendants. If the court had ordered Rosson tried immediately after Hayes at the June session, Rosson would have been able to assert that he had been subjected to cross-trial prejudice from publicity concerning the "notorious criminal" Hayes.[8]

■ The continuance of the case against Rosson, Faircloth and Parker when set in September is the first instance of delay to which Rosson had not, at least in some degree, contributed. But at that time the codefendant Faircloth was missing, an occurrence not normally expectable and not within the control of the government. The court and the government shared a legitimate interest in conducting one trial for Faircloth, Parker and Rosson instead of two or more. We are not able to say that

---

6. *See* Second Circuit Rules, supra, n. 4, §§ 1(b), 3; ABA Standards, supra n. 4, § 1.1(b).

7. As we have noted already, Rosson filed but one motion for speedy trial, on December 30 when arraigned. The subsequent motions, filed February 17, June 26, and October 1, were motions to dismiss the charges for alleged failure (in the form of past events) to give a speedy trial.

8. This is not to say that a defendant prejudices himself by asserting that he is entitled to severance, to speedy trial, and to protection from cross-trial prejudice. What we do say is that assertion of these points (plus consideration of the rights of other defendants) may create opposing tensions for the court to unravel. A defendant may not create for the court a Hobson's choice and automatically thrust the court into error regardless of which way it turns.

the court erred in continuing the case for approximately 60 days.[9]

In summary, we find no such impingement on any of those interests of appellant which are the concern of the Speedy Trial Clause as will justify a conclusion that his right to a speedy trial has been violated.

### 3. Sentence

Because concurrent sentences were imposed under 18 U.S.C. § 2113(a) and (d) they must be vacated and the cause remanded to the District Court with directions to resentence Rosson in accordance with the opinions of this court in United States v. White, 440 F.2d 978, (5th Cir., Mar. 19, 1971), United States v. White, 436 F.2d 1380 (5th Cir., No. 29,612, Jan. 27, 1971), and Eakes v. United States, 391 F.2d 287 (5th Cir. 1968).

Affirmed except as to sentence. Sentence vacated and remanded with instructions.

9. In a written order denying appellant's October 1 motion to dismiss, the trial judge emphasized the crowded state of the trial docket of the Southern District of Alabama, and the government does the same on appeal, while the appellant analyzes in detail the types of cases that actually were tried in September. We do not rest our decision on the state of the court's docket or upon its scheduling of criminal trial terms. Crowded dockets and the lack of lawyers and judges are factors in determining if there has been denial of a speedy trial, Dickey v. Florida, *supra*, 90 S.Ct. 1564, 26 L.Ed.2d at 32; United States v. Williams, *supra*, 416 F.2d at 9; Witt v. United States, 413 F.2d 303, 306 (9th Cir.) cert. denied, 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230 (1969), but we do not consider them to be conclusive.