UNITED STATES of America,
Plaintiff-Appellee,

v.

Sol MAYER, Defendant-Appellant.

No. 76–1858.

United States Court of Appeals,
Fifth Circuit.

July 20, 1977.

Thomas M. Haas, Chris N. Galanos, Mobile, Ala., for defendant-appellant.

Charles S. White-Spunner, U.S. Atty., William R. Fayre, Jr., E. T. Rolison, Jr., Asst. U.S. Attys., Mobile, Ala., for plaintiff-appellee.

Before WISDOM, GEE and FAY, Circuit Judges.

WISDOM, Circuit Judge:

The appellant, Mayer, appeals his jury conviction of 18 counts of violating 18 U.S.C. § 1001,[1] two counts of violating 18 U.S.C. § 641,[2] and one count of violating 18 U.S.C. § 371,[3] all stemming from his role in aiding, abetting, and conspiring in the filing of false statements with the Veterans Administration. Because we find that the district court unduly restricted Mayer's cross-examination of two of the prosecution's key witnesses, and consequently abridged his sixth amendment right to confront the witnesses against him, we reverse Mayer's conviction and remand the case to the district court for a new trial.

I.

Mayer's problems began when the Mobile Business College, a school founded in 1970 by Joan Thomas, her foster son Bruce Capps, and John Firth, approached Mayer's company, the Gulf South Financial Corporation, for a loan in January, 1971. Mobile Business College relied heavily on the tuition and fees paid by the Veterans Administration (VA) for the veterans enrolled in the school for its financial well-being. The VA requires that veterans receiving benefits must attend a specified percentage of classes. Further, for a school to be certified by the VA, a minimum of fifteen percent of the school's enrollment must be comprised of tuition paying non-veterans. Because Mobile Business College and its students were experiencing difficulty in meeting these two requirements, Thomas, Capps, and Firth instituted two fraudulent practices in order to insure the flow of VA funds to the school. They submitted false monthly certificates of attendance for enrolled veterans who were not meeting the

1. 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 641 provides:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

3. 18 U.S.C. § 371 provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

monthly attendance requirement imposed by the VA, and they created false files to reflect the enrollment of non-veteran students who did not exist. Before extending the loan to Mobile Business College, Mayer and his associates at Gulf South Financial Corporation were allegedly informed by those running the school of the falsification practices being utilized, apparently for the purpose of demonstrating the school's ability to repay the loan.

In March, 1973, Mayer and his business partner, Siegel, purchased the two-thirds interest of Thomas and Capps in the school and also 13 percent of Firth's one-third interest in the school. Firth continued to employ the record falsification procedures developed before Mayer and Siegel purchased the school. On February 1, 1974, Mayer and Siegel sold their interest in the school to Firth and Bob Long. Firth and Long continued to operate the school, and continued to defraud the VA, until August, 1974, when the VA closed the school.

On the basis of Mobile Business College's less than frank relationship with the VA, the school's founders—Thomas, Capps, and Firth, were charged in a 44-count indictment, and Mayer, Siegel, and a third business partner—Lyner—were charged in a 21-count indictment, with violating 18 U.S.C. §§ 371, 641, and 1001. Thomas, Capps, and Firth each pleaded guilty to one count in their indictment and had the remaining 43 counts against them dismissed when their pleas were accepted by the court. All three had agreed to aid the prosecution in its case against Mayer, Siegel, and Lyner, and to testify against them in court. They kept their bargain. Neither Thomas, Capps, nor Firth had been sentenced before testifying against Mayer and his co-defendants. Largely on the basis of the testimony given by these three witnesses, which was crucial in establishing both the knowledge and the complaisance of Mayer and his business partners in the fraud being practiced by Mobile Business College on the VA, Mayer, Siegel, and Lyner were convicted of all 21 counts against them. Mayer alone appeals, raising several claims of error. Because reversal is warranted by the district court's error in failing to allow Mayer and his co-defendants sufficient leeway in cross-examining the prosecution's chief witnesses against them, which was compounded by the court's seeming removal of the issue of the credibility of these witnesses from the jury, we find it unnecessary to reach Mayer's other assertions of error.

II.

The importance of the testimony given by Thomas, Capps, and Firth to the prosecution's case made it imperative for the defense to challenge their credibility. Mayer and his co-defendants attempted to do this by demonstrating that Thomas, Capps, and Firth were motivated to cooperate with the government by the hope and expectation of prosecutorial and judicial leniency in return for their incriminating testimony. The district court, however, did not allow the defendants to pursue adequately this avenue for impeaching the prosecution's chief witnesses against them.

As the following exchange between the court and defense counsel demonstrates, although the district judge was willing to permit the defense to cross-examine Thomas, Capps, and Firth about *the fact* that they each pleaded guilty to one count of a 44-count indictment, the judge improperly precluded inquiry as to *why* these witnesses entered guilty pleas and agreed to testify against Mayer and his co-defendants.

> Mr. Haas: [Mayer's attorney]: Judge, let me ask you this. I am not clear on it. Would you give us a definitive instruction before I get to that area of it, about how we are supposed to handle her plea.
>
> In other words, my position is that we can go into the whole plea bargaining situation in order to show—
>
> The Court: That is clearly against the rule.
>
> Mr. Haas: I don't agree with that.
>
> The Court: You do not agree, other than you can go into the fact that she pled guilty to one count and the reason why

the others were taken out of it has absolutely nothing to do with it.

Mr. Haas: Can we go into the fact that, when she pled guilty, the Government dropped the other charges?

The Court: No, sir, that is not a point for cross examination.

Mr. Haas: Can I respectfully reserve an exception to that ruling?

The Court: Yes.

Mr. Gaston [Siegel's attorney]: We would like to reserve an exception to that ruling, also.

The Court: All right.

Mr. Butler [Lyner's attorney]: Is Your Honor saying, and I would like to make an extreme example—suppose Joan Thomas stated on cross examination the reason she entered her guilty plea.

The Court: You can't even ask her the reason she entered a guilty plea. That fact that she entered a guilty plea is an admission of the liability and the Court says that is as far as you can go.

Mr. Butler: Your Honor, if the Court please, the point I am trying to make is to show her motive to testify. Again, as an extreme example, suppose she says that the United States Attorney told her that if she would testify against these defendants, so that they would get convicted, and make real sure her testimony was very incriminating, that he would see to it that the judge gave her probation.

The Court: Then, I would instruct the jury that that is a bald face promise that nobody in the world can make.

Mr. Butler: Judge, I realize that. Somewhere, in between, lies the truth that woman didn't walk in this Court plead-

ing to one count thinking I am going to get twenty years.[4]

The district court apparently believed that a witness' prior plea of guilty could be used as a prior conviction to impeach the witness on the basis of her bad character,[5] but could not be used to show the witness' improper motivation in testifying for the prosecution. The district court misapprehended the law.

■ A defendant's right to cross-examine fully the witnesses against him is one of constitutional dimensions, secured to federal defendants under the confrontation clause of the sixth amendment. *Alford v. United States*, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; *United States v. Morris*, 5 Cir. 1973, 485 F.2d 1385, 1386–87. State defendants have the right under the fourteenth amendment's due process clause. *Pointer v. Texas*, 1965, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination". *Davis v. Alaska*, 1974, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354.

"[C]ross-examination of a witness in matters pertinent to his credibility ought to be given the largest possible scope". *United States v. Partin*, 5 Cir. 1974, 493 F.2d 750, 763, *quoting McConnell v. United States*, 5 Cir. 1968, 393 F.2d 404, 406. This is especially true where a prosecution witness has had prior dealings with the prosecution or with other law enforcement officials, so that the possibility exists that his testimony was motivated by a desire to please the prosecution in exchange for the prosecutor's

---

4. First Supp. Record, Vol. II, at 616–618. This exchange, which occurred during the cross-examination of Thomas, was not the only occasion on which the court ruled that the motivation of the prosecution's chief witnesses in pleading guilty to one of 44 counts in the indictment against them and agreeing to testify for the prosecution was not a proper area for defense examination. During the course of Thomas' cross-examination, the court made the following rulings:

"You can impeach them that the crime has been committed and she has admitted that but, as to all of this detail as to what went into making up the crime and why she pled guilty and all of that, is improper cross examination." First Supp. Record, Vol. II. at 590.

"Once you elicit from her that she was guilty of falsifying the records, she pled guilty to it, that is as far as we go." First Supp. Record, Vol. II, at 592.

5. See Fed.R.Evid. 609, 28 U.S.C.Rule 609 (1975).

actions in having some or all of the charges against the witness dropped, *United States v. Onori,* 5 Cir. 1976, 535 F.2d 938, securing immunity against prosecution for the witness, *United States v. Dickens,* 8 Cir. 1969, 417 F.2d 958, or attempting to assure that the witness receives lenient treatment in sentencing, *Beaudine v. United States,* 5 Cir. 1966, 368 F.2d 417. In commenting upon the wide latitude to be afforded a defendant in cross-examining an accomplice about the disposition of the counts against the accomplice other than the one to which he had pleaded guilty—a situation analogous to the case before us—the Second Circuit observed:

"[I]t was relevant for the defense to develop any facts bearing upon [the witness'] possible motives to falsify his testimony. All the facts regarding the indictment against him and the disposition of the other two counts were pertinent so that the jury could pass judgment on [the witness'] motives and their effect on the truthfulness of his testimony. . . .

Whether or not the government had brought out on [the witness'] direct examination his plea to one count of the indictment, the indictment and its disposition was a matter so intimately related to [the witness'] possible motives to falsify and his relationship to the government which had called him as its witness that the trial court should have allowed full exploration of these matters on cross-examination."

*United States v. Masino,* 2 Cir. 1960, 275 F.2d 129, 132–33.

In support of its contention that the district judge did allow Mayer the required leeway in cross-examining the prosecution's witness, the government relies heavily on the following comment made by the court:

Now, if there is a question of additional information that you have that you want to bring out that some promise has been made, that if she would falsify herself, or stultify herself, in order to come off with a lighter sentence, that the United States attorney is going to recommend that she get a lighter sentence, I think you can go into that, but let me say to you right now, I did take those pleas. There was no such promise made. It is clearly written in the record, a copy of which you have, telling her and them that I am not bound by plea bargaining and I will do just as I will. I rejected the plea bargaining anyway.[6]

█ For two reasons, however, this ruling was insufficient to afford Mayer the opportunity to exercise fully his sixth amendment confrontation rights. First, under the decisions in this Circuit, a defendant may explore the nature of *any* agreement entered into by the prosecution and a witness who has an incentive for cooperating with the government, and he is not limited to examining only those agreements under which the witness may have agreed "to falsify herself or stultify herself". *United States v. Onori,* 5 Cir. 1976, 535 F.2d 938; *United States v. Greenberg,* 5 Cir. 1970, 423 F.2d 1106; *Grant v. United States,* 5 Cir. 1966, 368 F.2d 658. Second, a defendant's right to cross-examine a witness about any deals that may have been made or any understandings that may have been reached between the government and one of its witnesses does not hinge on whether *in fact* any such deals or understandings were effected. As this Court noted in *United States v. Onori,* 5 Cir. 1976, 535 F.2d 938, 945:

The Sixth Amendment confrontation clause guarantees to a criminal defendant the right to cross-examine a witness against him. . . . This right is especially important with respect to accomplices or other witnesses who may have substantial reason to cooperate with the government. . . . Indeed, it is so important that the defendant is allowed to 'search' for a deal between the government and the witness, even if there is no hard evidence that such a deal exists. . . . *What tells, of course, is not the actual existence of a deal but the witness' belief or disbelief that a deal exists.* (emphasis added).

---

6. First Supp.Record, Vol. II, at 625.

*Accord United States v. Dickens,* 8 Cir. 1969, 417 F.2d 958, 960–61; *Sandroff v. United States,* 6 Cir. 1946, 158 F.2d 623, 629, *cert. denied,* 1950, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584; *Farkas v. United States,* 6 Cir. 1924, 2 F.2d 644, 647.

■ Similarly, it avails the government little to assert that the trial judge enjoys discretion in determining the bounds within which a witness must be cross-examined. "[W]hile the scope of cross-examination is within the discretion of the trial judge, this discretionary authority to limit cross-examination comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment". *United States v. Bass,* 5 Cir. 1974, 490 F.2d 846, 858 n. 12. *Accord United States v. Garrett,* 6 Cir. 1976, 542 F.2d 23, 25; *United States v. Morris,* 5 Cir. 1973, 485 F.2d 1385, 1387. Because the district court did not allow the defense sufficient inquiry into the motivation of the prosecution's chief witnesses in testifying, and consequently frustrated Mayer's attempts to fully exercise his sixth amendment rights, the trial judge never reached the point at which he had the discretion to limit the extent of cross-examination.

■ Furthermore, an instruction given by the court in its charge to the jury exacerbated the effect of its unduly restrictive rulings on cross-examination. The jury was instructed as follows:

I likewise charge you *as a matter of fact,* that in considering the motivation for testimony of any witness who has testified and who has previously pled guilty to a charge of similar nature to the ones levied in this indictment, that no promise was made to any defendant in that case as to what this Court might deem an appropriate sentence—a fact that each of those defendants in that case thoroughly understood from this Court. For as I shall later charge you the question of punishment of any defendant found guilty in a Federal Court is solely the province of the Court and of no one else. (emphasis added).[7]

The district judge believed that he was entitled to give such a charge to the jury because he had presided over the proceedings in which Thomas, Capps, and Firth entered their pleas of guilty; and he therefore knew that he had attempted to insure that Thomas, Capps, and Firth entered their guilty pleas knowingly and voluntarily, and without any expectation—whether or not induced by the prosecution—of lenient treatment in sentencing. At least with respect to Firth, there was a factual dispute as to the witnesses' expectations in sentencing; for an investigator hired by the defense testified that Firth told him that Firth was to get probation in return for his testimony at Mayer's trial.[8] The clear ef-

7. First Supp.Record, Vol. III, at 1401. The defense made a timely objection to this instruction, First Supp.Record, Vol. III, at 1434–35, 1438–40.

8. A petition for habeas corpus recently filed by Firth in the Southern District of Alabama (No. 76–508–H) supports the investigator's testimony. In his petition, Firth states the following reasons why he should be granted habeas corpus relief:

During the course of the extensive plea bargaining which preceded my plea of guilty to one count of the indictment, the Assistant U.S. Attorney, Mr. Rudy Favre, advised me through my attorney, Mr. Barry Hess that if I would cooperate with the United States' Attorney's Office and the F.B.I. in conjunction with an investigation they were conducting at that time, in regards to Sol Mayer, Sid Lyner and Mel Siegel, and if I would turn over to Mr. Jack Heisler, a Special Agent

with the Mobile office of the F.B.I., a number of cancelled checks the Government needed in order to obtain indictments against said three individuals and if I would furnish some additional information and testify in Federal Court against these three individuals, the U.S. Attorney's Office would recommend to the Court that 43 of the 44 indictments against me would be dismissed and that I would be granted immunity from any further prosecution and that I would be granted immunity from any further prosecution concerning Mobile Business College, Mobile City College, and International Business Academy. He also advised me through my attorney Mr. Hess that he had made the same proposition to my co-defendants, Joan R. Thomas and Bruce G. Capps. He further advised that he felt that it would be in my best interest if he made no recommendation to the Court as to my sentence but that in no event would I receive a greater sentence that

fect of the court's instruction was to remove from the jury the question whether the guilty pleas entered by Thomas, Capps, and Firth, and the testimony later given by them at Mayer's trial, were motivated by a desire to please the prosecution and the hope of receiving in return a light sentence on the one count to which the witnesses pleaded guilty. At oral argument, the government made clear that it contends that the district court must have the right to take from the jury the issue of the witnesses motivation in pleading guilty and testifying if the litany engaged in by the court with Thomas, Capps, and Firth in accepting their guilty pleas is to be anything other than a charade. We disagree.

A judge's determination, made for purposes of accepting an individual's guilty plea, that the plea was entered voluntarily and without any expectation of judicial or prosecutorial leniency, does not have collateral estoppel effect at a subsequent criminal proceeding at which the individual testifies against an accomplice, co-defendant, or co-conspirator, and his motivation for so testifying is in issue. In *United States v. Marion*, 6 Cir. 1973, 477 F.2d 330, the defendant sought to determine whether an accomplice who had pleaded guilty and was testifying against him had made any deals with the government. The trial judge had taken the witness' guilty plea, and made comments at trial to the effect that he would not have accepted the witness' guilty plea had he not believed that the witness was telling the truth in asserting that no deal had been made between him and the government. Focusing on the district court's failure to caution the jury that "regardless of the judge's opinion, final determination of credibility of the witness is a responsibility reserved to the jury", the Sixth Circuit reversed the defendant's conviction. 477 F.2d at 332. As in *Marion*, the trial judge's instruction on the guilty pleas entered by the prosecution's chief witnesses in the instant case was "not immediately coupled with a caveat that the ultimate decision [on the credibility of the witnesses] is for the jury". *Id.* However, we need not decide whether the challenged instruction alone would warrant reversal.[9] Coupled with the court's infringement of Mayer's sixth amendment right to a thorough cross-examination of the witnesses against him to determine their motivation in testifying, it clearly does. This Court faced a similar combination of trial errors in *United States v. Greenberg*, 5 Cir. 1970, 423 F.2d 1106. Speaking through Judge Bell, we reversed the defendant's conviction and observed:

"The curtailment of cross-examination was compounded during closing argument when the court, at the request of the prosecutor, instructed the jury that there had been no deal of any kind between [the witness] and the prosecution. This may have been a true statement but it was not based on any evidence of record. It was this very subject matter which appellant's counsel had sought to

---

Joan Thomas or Bruce Capps. According to Mr. Hess, he also advised that in view of the fact that defendant Joan Thomas was a female and the fact that she was a "school teacher" he felt she would receive a light sentence. Because of these inducements, I felt that it would be in my best interests to accept the proposition offered by Mr. Rudy Favre. Also, because of the fact that Thomas, Capps and myself all entered a guilty plea to the same count and the fact that we all three shared equal ownership in the school and shared equal responsibility, I had every reason to believe that we would all receive the same sentence.

9. The problem posed by the district court's comment on the understanding of the witnesses in pleading guilty is to be distinguished from the situation this Court addressed in *United*

*States v. Rosson*, 5 Cir. 1971, 441 F.2d 242, cert. denied, 1971, 404 U.S. 843, 92 S.Ct. 140, 30 L.Ed.2d 78. In *Rosson*, the defendant's accomplice pleaded guilty and agreed to testify against the defendant in exchange for the prosecutor's promise to make certain sentencing recommendations to the court for the accomplice. In its charge at the defendant's trial, the court instructed the jury that the prosecutor's recommendation wasn't binding on him, and we held that the court did not err in doing so. The crucial difference between the challenged instruction in *Rosson* and that in the instant case is that the instruction in *Rosson* did not constitute a judicial comment on the witness' understanding and motivation in pleading guilty and testifying while the instruction challenged here did.

develop on cross-examination. The inquiry was directed to [the witness'] credibility and to possible bias stemming from a promise of reward for assisting the government in the prosecution."

423 F.2d at 1108.

Because the district court's errors are of constitutional proportions, reversal of Mayer's conviction is required unless the errors were "harmless beyond a reasonable doubt". *Chapman v. California,* 1966, 368 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *United States v. Alston,* 5 Cir. 1972, 460 F.2d 48, 54, *cert. denied,* 1972, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122.[10] After carefully reviewing the record, we are unable to say that the errors were so inconsequential as to be harmless under *Chapman.* Thomas, Capps, and Firth were the government's principal witnesses, and the prosecution's case was intimately tied to their credibility. Their credibility, in turn, was linked to their motivation in testifying, an area of inquiry that the trial judge was too quick to close to the defense. The government argues that the court's restrictive rulings on cross-examination were made only during the cross-examination of Thomas, and that full cross-examination of both Capps and Firth was permitted. Capps testified before Thomas, Firth after her. Although the cross-examination of Capps was unrestricted, the defense was undoubtedly under the impression that the court's rulings restraining their cross-examination of Thomas ap-

plied as well to their cross-examination of Firth. Thus, the defense was precluded from thoroughly cross-examining two of the prosecution's three key witnesses. In holding that the unconfined cross-examination of Capps is insufficient to render the constraints placed on the cross-examination of Thomas and Firth harmless, we agree with the reasoning of the court in *United States v. Dickens,* 8 Cir. 1969, 417 F.2d 958. There the Eighth Circuit found that the unrestricted cross-examination of one prosecution witness did not render the restricted cross-examination of a second witness harmless.

"In reaching this decision [reversal], we are aware that Murphy's testimony closely paralleled that of Reinhardt and that the restriction compelling reversal was not present in the cross-examination of Murphy. These facts, however, do not persuade us that the error committed was harmless. . . . The record clearly demonstrates that the relationship between Reinhardt and Murphy was close and substantial; a successful attack on the credibility or veracity of either accomplice could reasonably be expected to detract from the testimony of both."

417 F.2d at 962–63.

The district court's infringement of Mayer's sixth amendment confrontation rights, the effects of which were aggravated by the court's instruction removing from the jury the issue of motives of the govern-

---

**10.** Numerous decisions by both the Supreme Court and this Court have indicated that "a denial of cross-examination without waiver would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it". *Davis v. Alaska,* 1974, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, 354; *Smith v. Illinois,* 1968, 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956, 959; *Brookhart v. Janis,* 1966, 384 U.S. 1, 3, 86 S.Ct. 1245, 16 L.Ed.2d 314, 316–17; *United States v. Morris,* 5 Cir. 1973, 485 F.2d 1385, 1387. All of these cases, however, involved the *complete* denial of defense access to an area that is properly the subject of cross-examination under the sixth and fourteenth amendments, and consequently were a product of the principle that "when cross-examination directed to its main objective—destruction of credibility—is unduly restricted, the record, of necessity"

does not, cannot, reflect what would have been developed. *Beaudine v. United States,* 5 Cir. 1966, 368 F.2d 417, 423. Where, on the other hand, there has not been a *complete* denial of access to a proper area of defense cross-examination, the *Chapman* standard is the proper one for gauging whether the district court's error requires reversal. See *United States v. Duhart,* 6 Cir. 1975, 511 F.2d 7, *cert. dismissed,* 1975, 421 U.S. 1006, 95 S.Ct. 2409, 44 L.Ed.2d 675. Because the defense in the instant case was able to bring out the fact that Thomas, Capps, and Firth were permitted by the prosecution to plead guilty to one of 44 counts in the indictment against them and to have the remaining charges against them dropped, the defense was not *completely* precluded from demonstrating that Thomas, Capps, and Firth were testifying because of a promise or an expectation of leniency in their sentencing.

ment's primary witnesses in testifying against him, requires that Mayer's conviction be

REVERSED.