THOMAS A. CLARK, Circuit Judge,
dissenting:
I respectfully dissent. The false oath part of the indictment (Count IV)[1] should have been dismissed as requested by defendant. It does not specify what Bartlett allegedly lied about. His motion for a bill of particulars asking for those specifications was denied. Furthermore, the evidence does not support the conviction. Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), teaches, in an opinion by Chief Justice Burger, that to sustain a conviction under the federal perjury statute [2] the witness must understand the question and knowingly give a false answer. The following excerpts are illuminating:
Petitioner’s perjury conviction was founded on the answers given by him as a witness at that bankruptcy hearing, and *1190 in particular on the following colloquy with a lawyer for a creditor of Bronston Productions:
“Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?
“A. No, sir.
“Q. Have you ever?
“A. The company had an account there for about six months, in Zurich.
“Q. Have you any nominees who have bank accounts in Swiss banks?
“A. No, sir.
“Q. Have you ever?
“A. No, sir.”
It is undisputed that for a period of nearly five years, between October 1959 and June 1964, petitioner had a personal bank account at the International Credit Bank in Geneva, Switzerland, into which he made deposits and upon which he drew checks totaling more than $180,000. It is likewise undisputed that petitioner’s answers were literally truthful, (a) Petitioner did not at the time of questioning have a Swiss bank account, (b) Bronston Productions, Inc., did have the account in Zurich described by petitioner, (c) Neither at the time of questioning nor before did petitioner have nominees who had Swiss accounts. The Government’s prosecution for perjury went forward on the theory that in order to mislead his questioner, petitioner answered the second question with literal truthfulness but unresponsively addressed his answer to the company’s assets and not to his own-thereby implying that he had no personal Swiss bank account at the relevant time.
* * * * * *
We might go beyond the precise words of the statute if we thought they did not adequately express the intention of Congress, but we perceive no reason why Congress would intend the drastic sanction of a perjury prosecution to cure a testimonial mishap that could readily have been reached with a single additional question by counsel alert-as every examiner ought to be-to the incongruity of petitioner’s unresponsive answer. Under the pressures and tensions of interrogation, it is not uncommon for the most earnest witnesses to give answers that are not entirely responsive. Sometimes the witness does not understand the question, or may in an excess of caution or apprehension read too much or too little into it. It should come as no surprise that a participant in a bankruptcy proceeding may have something to conceal and consciously tries to do so, or that a debtor may be embarrassed at his plight and yield information reluctantly. It is the responsibility of the lawyer to probe; testimonial interrogation, and cross-examination in particular, is a probing, prying, pressing form of inquiry.
* * * * * *
A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether “he does not believe [his answer] to be true.” To hold otherwise would be to inject a new and confusing element into the adversary testimonial system- we know. Witnesses would be unsure of the extent of their responsibility for the misunderstandings and inadequacies of examiners, and might well fear having that responsibility tested by a jury under the vague rubric of “intent to mislead” or “perjury by implication.”
409 U.S. at 353-55, 358, 359, 93 S.Ct. at 597-98, 600. (Footnotes omitted.)
At trial the prosecution and the questioning by the the trial judge[3] focused on the *1191 truthfulness vel non of Bartlett’s answer to the last question in which he denied knowing the principals of Southern Venture, Ltd. Bartlett persisted in his testimony that he *1192 understood “principals” in the context of the question to connote officers and directors that had been appointed by the corporation, and Bartlett’s answer was literally true. Reverting to the lesson of Bronston, supra, if the questioner had pursued the inquiry, he could have determined that Robert Herring had initiated the incorporation of Southern Venture, Ltd. and was its beneficiary and controlling individual. Had Bartlett persisted in his denials to a more adequate line of questioning, the jury might then, and only then, have had a sufficient basis upon which to convict under the statute.
It is clear to me that between the trial judge’s questioning of Bartlett, reflected in footnote 3, and his instructions to the jury,[4] *1193 the jury concluded that Bartlett was guilty because he did not answer the question by naming Robert Herring as principal. For these reasons I would reverse with directions to dismiss Count IV of the indictment.
I also would reverse as to Counts I and II. In order to convict, the jury had to find that Bartlett knew his actions aided and abetted his clients in their criminal fraud. He in no way profited from the monies the other defendants criminally procured, unless the payment of a $3,900.00 fee during the period could be so classified. His work seemed to warrant a fee in that amount. He testified that he prepared the incriminating title transfer documents at the request of his clients, without knowledge that fraud was involved. Hindsight indicates extreme carelessness. Actual knowledge that fraud was being perpetrated by his clients has to be inferred.
The closeness of the evidence coupled with the conduct of the trial causes me to conclude that Bartlett did not receive a fair trial, and a new trial should be granted as to Counts I and II. No one or even two incidents would lead me to this conclusion. However, the totality of the conduct and unusual circumstances leads me to conclude that the jury verdict could have been influenced by matters other than the evidence and instructions.
The cross-examination of Bartlett and the jury instruction on the definition of “principals,” previously discussed, reflect a prosecutorial tone on the part of the trial judge.
Prior to trial Bartlett, through counsel, filed a motion for recusal based on his belief that the judge was biased because of tensions between them at the recent trial of Robert Herring.[5] Bartlett represented Herring in that trial. Herring was originally a co-defendant in this case. It was Bartlett’s representation of Herring’s corporations that gave rise to Bartlett’s becoming a defendant in this case. In response to *1194 the initial motion for recusal, which was renewed several times prior to verdict, the trial court remarked as follows:
THE COURT: As you know, and you can let Fred [Bartlett] testify, he and I grew up together around the corner from each other, played together, I knew his mother and whole family. He is unfortunately not the first person I grew up with who has been in court to be tried, but a judge is not supposed to be a person who has no knowledge of life or no knowledge of people. But remember, I am not judging his guilt or innocence. Twelve people are judging his guilt or innocence.
The court denied the motion.
Another significant incident was the court’s sua sponte instruction[6] to the jury just prior to the testimony of Austin Herring, a co-defendant, who had entered into a guilty plea agreement pursuant to Federal Rule of Criminal Procedure 11(e).
I do not agree with the majority opinion, which relies upon United States v. Rosson, 441 F.2d 242, 244 (5th Cir. 1971), and United States v. Freeman, 619 F.2d 1112, 1122 (5th Cir. 1980), that this instruction was “proper and more favorable than not to the defense.” I read the instruction to be tantamount to the trial judge vouching for the truth of the testimony of the co-defendants by assuring the jury that he held the threat of a five-year sentence over the co-defendants.
During the bench conference following this instruction, defense counsel moved for a mistrial and renewed the motion for recu-sal. During the exchange, which became heated, the trial judge shook his finger at defense counsel within the view of the jury. Numerous other incidents, as I read the record, lead me to conclude that the treatment of the defense was not evenhanded when compared to that afforded the prosecution. Defense counsel was pressed to move along, the Government was not. The court intervened frequently when defense counsel was at the podium, but not when the prosecutor was questioning.
I do not suggest that the trial judge had a fixed impression as to Bartlett’s guilt. But the jurors had no window to the judge’s mind. Like all of us they could only take their clues from what they observed. The atmosphere of the trial was sufficiently clouded by the judge’s conduct during trial, his examination of the defendant, and his vouching for the credibility of certain Government witnesses to taint the jury’s verdict. Believing that the verdict might have been different without these incidents, I dissent.

. Count IV charged that Bartlett “knowingly and fraudulently did make a false oath as to a material matter in and in relation to said proceeding in that he testified as follows in answer to questions propounded:”
Then follows the questions and answers appearing in the first portion of footnote 7 of the majority opinion, which will not be repeated here, followed by:
When, in truth and fact as FRED E. BARTLETT, JR., then and there well knew: FRED E. BARTLETT, JR. had on or about February 16, 1977, caused Southern Venture Limited to be incorporated in the Commonwealth of the Bahamas by arranging with persons at the law firm of Higgs & Johnson, Nassau, Bahamas, to incorporate said company, use the Higgs & Johnson law firm office address as the address of Southern Venture Limited, and select persons to serve in name only as officers and directors of Southern Venture Limited; also as FRED E. BARTLETT, JR. then and there well knew, Southern Venture Limited had no business and operated in name only with stated paid in capital of Five Dollars ($5.00); all in violation of 18 U.S.C. § 152.

. Bronston involved a prosecution under 18 U.S.C. § 1621, the general perjury statute, arising out of testimony given in a bankruptcy proceeding, whereas Bartlett was convicted under 18 U.S.C. § 152, punishing anyone who “knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding .... ” The principles enunciated in the former case have no less force in the case at bar.

. Following is the part of the court’s questioning on the issue of the meaning of “principals”:

EXAMINATION BY THE COURT:

Q Mr. Bartlett, look at the index to the Georgia Code and tell me where you find the work [sic] principal spelled p-r-i-n-c-i-pa-1 to be used in those sections of the Goer-gia [sic] law which you normally have been acquainted with in your practice.
A Judge, they have principal involved in two or three things. You have judgment for principal. Of course that is for money which is-
*1191 Q That’s common usage for the word principal, isn’t it?
A Yes sir.
Q That is amount of money that’s involved on something?
A Principal and agent, that is where you have one person acting for another.
Q Is that one you are familiar with?
A I am familiar with that. It has agents of a corporation. I have looked up some law under that. It’s not really defined in Georgia. The only case bearing on it is the Vardiman (phonetically) case which states officers as such of the corporation.
Q Read the jury what it says as to agency, the word principal means.
A “The relation of principal and agent arises whenever one person expressly or by implication authorizes another to act for him or subsequently ratifies the acts of another in his behalf.”
Q Were you familiar with that term at the time you represented R. L. Herring or not?
A Yes sir. I am familiar with the difference between a principal and agent. But that’s not what a principal of a corporation is. Principals of a corporation is a mixed question.
Q What other section of the law is the term principal used in?
A Principal and surety.
Q That’s where a person goes on like a bond and the principal is the main obligor and the surety is is [sic] the person who backs him up, isn’t he?
A Yes sir. Principal and guarantor. There are soem [sic] technical distinctions between the two.
Q Now when you went down to the Bahamas and saw the law firm of Higgs and Johnson did you or did you not tell that law firm that Mr. R. L. Herring was the individual in whose behalf you were there?
A No sir.
Q Well, upon whose instructions did the law firm act as to that corporation?
A Mine and Spencer Lee’s. We were the ones who told them what to do.
Q Did you ever tell them that Mr. R. L. Herring was the person behind that corporation?
A I don’t know whether I ever did or not, Your Honor. I do not recall ever telling them that. I may have at a later time. Or he may have told them. I don’t know.
Q Well, who do you think the law firm in the Bahamas considered to be the person who was authorized to make decisions as to this corporation?
MR. KADISH: Objection, Your Honor. That question would be an improper question because what the law firm in the Bahamas thinks-nobody would know what they think.
THE COURT: I said who did he think.
A THE WITNESS: The law firm understood that I was representing a person or group of people. They knew this. But they did not know who they were. And I know that in the inception. Now whether or not I later discolsed [sic] that to them at Mr. Herring’s agreement or insistence or permission I do not know. t,
Q Well, if the law firm took instructions from you and you don’t know anything about all those Caterpillars that supposedly were swapped for land how could the corporation have acquired those Caterpillars without your having known about it and having told the lawyers down there to prepare paper work and do whatever was necessary?
A They did not prepare any paperwork. Nothing was prepared on behalf of Southern Venture that I know of. Mr. Herring simply stated he had some Caterpillar tractors.
Q How could the title get into Southern Venture though if you as a representative did not have anything to do with it?
A It is not necessary that they were in Southern Venture. If Mr. Herring owned them he could have transferred them to Her-co and had the payment made to Southern Venture.
Q Did he have payment made and if so did you transmit it down there so they could put it in the bank?
A The only payment was the transfer of property.
Q Oh. A bank account was never opened. Is that right?
A As far as I know no bank account was ever opened.
Q All right. We’ve got a lot of corporate charters here that were organized that have been testified to. As to Herco Transportation and Leasing and Superior Equipment, tell these ladies and gentlemen of the jury when you perceived that those corporations came into genuine legal existence under the laws of this state.
A All right, Judge.-
Q Here is the corporate code if you need to refer to it.
A I don’t think I need to refer to it.
MR. KADISH: May the witness have the charters please?
THE COURT: Oh, yes sir.
MR. KADISH: Your Honor, may we approach the Bench.
MR. KADISH: Since Your Honor has taken the liberty to begin the cross examination of the witness which you are permitted to to [sic] examine the witness as a Federal judge, and since the examination is getting rather lengthy and since you have pointed out to him from a book that principal means princi *1192 pal agent I have here from the ALR index under principal agent a reference that principal agent also refers to corporate officers and agents in this index.
THE COURT: You can ask him when I get through-
MR. KADISH: I would like the Court to ask him from this same document.
THE COURT: You can ask him whatever you want to.
MR. KADISH: Most respectfully and humbly to show the Court’s neutrality now that I have pointed this out to the Court I would ask the Court to call to the jury’s attention that under principal and agent there is a section that is commonly seen in a very well known legal jurisprudencial [sic] research reporter under corporate officers and agents in this index. That’s all I would like you to do.
THE COURT: I will pull the index and look at it. I sure will as soon as we take a break and see what it says. The fact that it is in the index doesn’t mean anything. I will give you ample time to argue about what the word means.

END BENCH CONFERENCE.

THE COURT: Do you gentlemen have those charters?
A THE WITNESS: O.K. Herco Corporation was duly incorporated on the 10th of October, 1974.
Q That’s what it says on that sheet of paper, isn’t it?
A Yes sir.
Q But when under the law did that corporation come into legal existence?
MR. KADISH: I object, Your Honor, to the question. As I understood it Your Honor prohibited the witness from testifying as to certain questions of law like that saying that the Court would instruct. I just would object to the Court’s question as that being a legal conclusion for the jury to determine on the Court’s instructions.
THE COURT: The Court is trying to find out if the witness is familiar with the law because he is on trial for supposedly not as a lawyer doing what the law requires.
MR. KADISH: I understand. But most respectfully-
THE COURT: Whether or not he knows it is a question that the Court deems it necessary to find out about.
MR. KADISH: I understand that. And I wouldn’t have made the objection but most respectfully I remember asking questions of that nature, I believe-
THE COURT: Of this witness?
MR. KADISH: Yes. Where the Court has prohibited me from going into questions of law because you said you would instruct on it. I may be wrong but that’s what I thought.
THE COURT: If I prohibited you, sir, after I finish I will back up and permit you to ask him any question along those lines that you would like.
MR. KADISH: I just would object because this is within the province of the jury and I think should be kept there, most respectfully.

. The charge in Count 4, ladies and gentlemen, is not that just one particular question was answered falsely. The charge instead is that a series of questions considered as a whole were answered either wholly or partly in a false manner. You look at all of what the defendant was asked. Some of it you may find to be true; some of it you may find to be false; all of it you may find to be true; all of it you may find to be false. It is only necessary that you find some substantial part of the whole to have been falsely stated under oath for you to find a verdict of guilty.
Now you have heard several words used, one of which is nominee. What does the word nominee mean? If we look at Black’s Law Dictionary it says the word nominee means one who has been nominated or proposed for an office. It also says the word means one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee.
Now the words [sic] principal has been discussed. What does that word mean, ladies and gentlemen? First of all, as we look at Webster’s New World Dictionary, the Second College Edition which happens to be the only one that I have available in the courthouse that’s a regular edition, it defines the words [sic] principal as first in rank, authority, importance, degree. That is or has to do with principal as a noun. A principal person or thing, specifically a chief head, a governing or presiding officer, specifically of a school. A main actor or performer. In finance it refers to the amount of a *1193 debt, investment, minus the interest or on which interest is computed, the face value of a stock or bond. In law, a person who employs another to act as his agent. The person primarily responsible for an obligation. A person who commits a crime or is present as an abetter to it.
Now if we go further and we look in Black’s Law Dictionary, that says, as a [sic] adjective, the word means chief, leading, most important or considerable, primary, original, highest in rank, authority, character, importance or degree. It’s used to refer to a principal establishment or place of business as being the main establishment or place of business. The principal domestic establishment. As a noun it refers to the source of authority or right, a superintendent, as of a school district, the capital sum of a debt or obligation as distinguished from interest or other additions to it. In criminal law, a chief actor or perpetrator, or an aider or abetter as I have already defined it for you. In the law of agency the employer or constitutor of an agent, the person who gives authority to an agent or attorney to do some act for him.
You have before you a corporate registration form which is in evidence. You will see that the word principal is used upon it. I believe in that case it has principal office, main office is what that means. Where is your principal office? You will see on there it has principal officer, principal directors, I believe; principal officer, main officer, main directors.
It is for you to determine what Mr. Bartlett understood the word principal to mean when he was asked to answer a question which is written in that indictment and to that question concerning the word principal he answered no. Look at all of those questions. Consider all of them as a whole, and determine whether or not beyond a reasonable doubt, considering the testimony as a whole, one or more of those questions has been proved by the Government beyond a reasonable doubt to have been falsely made, knowingly and fraudulently, in accordance with the elements given you by the Court.
I further call to your attention that at the end of Count 4 the charge says when in truth and fact Fred E. Bartlett, Jr., then and there knew certain things. The Government, ladies and gentlemen, does not have to prove that Mr. Bartlett knew exactly what it alleges in this indictment that he knew. This is only notice to him of the charge. You base your finding as to whether or not he falsely testified knowingly and fraudulently, based upon what the evidence shows he knew at the time he testified, whether it be just what is set forth in this indictment as notice to him or whether it would be less or more. Whatever the evidence shows Mr. Bartlett knew at the time he testified is what you base your decision on as to whether or not he then testified falsely, knowingly and fraudulently.

. United States v. Herring, 602 F.2d 1220 (5th Cir. 1979).

. [The Court] Ladies and gentlemen, at the conclusion of the case in instructing you on the law that is applicable to the case, the Court will again tell you that it is your duty to judge the credibility of every witness to determine whether or not you will believe the witness, whether or not you will believe all or any part of what a witness says. For that purpose you are entitled to know all about the witness, including in this instance the fact that under the terms of that agreement this witness has entered a plea of guilty and is here testifying. And I remind you that just as it is your duty to determine whether or not beyond a reasonable doubt the defendant is guilty of the charges set forth herein and which are being tried, it is the Court’s duty to determine what sentence, if any, is to be imposed upon any defendant who either enters a plea of guilty and is thereby convicted or is convicted after being tried before a jury. Under the laws of the United States as applied to this particular situation the decision of what sentence is to be imposed rests solely in the hands and the mind of the trial judge. Of course there is always the possibility that a defendant, appearing as a witness, can endeavor to make a good impression upon the trial judge who is sitting next to him for the purpose of trying to get a favorable sentence. There are many possibilities. You take into consideration that it is this judge who sits next to this witness in whose hands the determination of what sentence he is to receive lies. He has not yet be [sic] sentenced and will not be sentenced until after this case has been completed.... Now there is a mention in that plea agreement that the United States will recommend that this judge give this defendant no more than six months actual time to serve in the penitentiary. That recommendation is not binding upon this judge. The law in this instance, I think you are entitled to know, permits this judge to sentence this man to an actual term of imprisonment for up to five years. That is the possibility of the situation. None of that will be determined until a later date. I think you are entitled to know that the possibility of five years is hanging over his head at this very moment. (Emphasis added.)