ACCEPTED
06-15-00104-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
11/16/2015 2:42:05 PM
DEBBIE AUTREY
CLERK

**CAUSE NO. 06-15-00104-CR**

IN THE SIXTH COURT OF APPEALS

TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

11/16/2015 2:42:05 PM

DEBBIE AUTREY
Clerk

**KENNEDY DEWAYNE RILEY,**

Appellant

**VS.**

**THE STATE OF TEXAS,**

Appellee

On Appeal from Cause No. 13F0131-202 in the
202nd Judicial District Court of Bowie County, Texas

## BRIEF OF APPELLANT

Respectfully submitted,

/s/ Clint E. Allen
Attorney at Law
Texas Bar No. 24012206
207 East Hiram Street
Atlanta, Texas 75551
Tel:  903.799.7779
Fax:  903.799.7771
clint@clintallenlaw.com

Attorney for Appellant

## ORAL ARGUMENT REQUESTED

-1-

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.1(a), the following is a complete list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

1.   **Appellant**

     Kennedy Dewayne Riley

2.   **Appellant's Trial Counsel:**

     Mr. Rick Shumaker
     Bowie County Public Defender's Office
     424 West Broad Street
     Texarkana, Texas 75501

3.   **Appellant's Appellate Counsel:**

     Mr. Clint E. Allen
     Attorney at Law
     207 East Hiram Street
     Atlanta, Texas 75551

4.   **Appellee:**

     The State of Texas

5.   **Appellee's Trial Counsel:**

     Mr. Michael Shepherd
     Ms. Lauren Sutton
     Assistant Criminal District Attorneys
     601 Main Street
     Texarkana, Texas 75501

6.   **Appellee's Appellate Counsel:**

     Ms. Lauren Sutton
     Assistant Criminal District Attorney
     601 Main Street
     Texarkana, Texas 75501

# TABLE OF CONTENTS

Identity of Parties and Counsel……………………………………………………………………2

Table of Contents………………………………………………………………………………….3

Index of Authorities………………………………………………………………………………..5

Statement of the Case……………………………………………………………. 8-9

Issues Presented……………………………………………………………………………………10

Statement Regarding Oral Argument……………………………………………………………11

Statement of Facts…………………………………………………………………………………12

Summary of the Argument…………………………………………………………………………20

Argument……………………………………………………………………………….. 23

     ISSUE NO. 1:   The evidence was legally insufficient to support Appellant's conviction for Capital Murder…………………………………………………………………………… 23

     ISSUE NO. 2:   The trial court erred when it denied Appellant's Motion for Instructed Verdict……………………………………………………………………………………………23

     ISSUE NO. 3:  The Trial Court erred when it denied Appellant his right to cross examine Alicia Green regarding all aspects of her plea agreement with the State………………………. 30

     ISSUE NO. 4:  The Trial Court erred when it denied Appellant his right to cross examine Kennial Jacobs regarding her pending charge of Unauthorized Use of a Motor Vehicle……………………………………………………………………………………….. 36

     ISSUE NO. 5:   The trial court erred when it admitted an audiotape tape allegedly containing a telephone conversation between Alicia Green and Appellant because a proper foundation for its admissibility was not established………………………………………………40

     ISSUE NO. 6.   Appellant suffered egregious harm because the jury charge failed to properly apply the accomplice witness instruction in the abstract portion of the charge to the facts of the case in the application portion of the charge……………………………………………..44

Prayer………………………………………………………………………………………48

Certificate of Service………………………………………………………….49

Certificate of Compliance………………………………………………………49

# INDEX OF AUTHORITIES

**CASES:**

*Abdnor v. State,* 871 S.W.2d 726 (Tex. Crim. App. 1994)……………………………………44-45

*Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1985)…………………………………….. 45

*Arline v. State,* 721 S.W.2d 348 (Tex. Crim. App. 1986)…………………………………….. 45

*Barnes v. State,* 56 S.W.3d 221 (Tex.App.-Fort Worth 2001, pet. ref'd)…………………… 26-27

*Brewer v. State,* 126 S.W.3d 295 (Tex. App. - Beaumont 2004, pet. ref'd)………………… 27-28

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crime. App. 2010)……………………………………23

*Brown v. State,* 270 S.W.3d 564 (Tex. Crim. App. 2008)…………………………………..24

*Burkhalter v. State,* 493 S.W.2d 214 (Tex. Crim. App. 1973)………………………………….. 38

*Bustamante v. State,* 106 S.W.3d 738 (Tex. Crim. App. 2003)…………………………………. 28

*Castillo-Fuentes v. State,* 707 S.W.2d 559 (Tex. Crim. App. 1986)……………………………..47

*Cathey v. State,* 992 S.W.2d 460 (Tex. Crim. App. 1999)……………………………………….25

*Conner v. State,* 67 S.W.3d 192 (Tex. Crim. App. 2001)…………………………………… 28

*Cox v. State,* 830 S.W.2d 609 (Tex. Crim. App. 1992)…………………………………………..25

*Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974)………….35, 38

*Delaware v. Van Arsdall,* 475 U.S. 673 (1986)………………………………………….. 35, 39

*Dillion v. State,* 574 S.W.2d 92 (Tex. Crim. App. 1978)………………………………………….. 28

*Dinkins v. State,* 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)……………………………………44

*Dues v. State,* 634 S.W.2d 304 (Tex. Crim. App. 1982)……………………………………………28

*Ex Parte Reynolds,* 588 S.W.2d 900 (Tex. Crim. App. 1979), cert. denied *Texas v. Reynolds,* 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980)……………………………………………27

*Golden v. State,* 851 S.W.2d 291 (Tex. Crime. App. 1993)…………………………………… 25

*Gray v. State,* 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004)………………………………… 45

*Guevara v. State,* 152 S.W.3d 45 (Tex. Crim. App. 2004)……………………………………..28

*Hill v. State,* 30 S.W.3d 505 (Tex. App. - Texarkana 2000, no pet.)……………………………47

*Jackson v. State,* 575 S.W.2d 567 (Tex. Crim. App. 1979)……………………………..30, 36, 41

*Jackson v. Virginia, 443 U.S. 307* (1979)…………………………………………………………….23

*Johnson v. State,* 43 S.W.3d 1 (Tex. Crim. App. 2001)……………………………………..43-44

*Johnson v. State,* 698 S.W.2d 154 (Tex. Crim. App. 1985),
     *cert. denied,* 107 S.Ct. 239 (1986)……………………………………………….. 30, 36, 41

*Johnson v. State,* 967 S.W.2d 410 (Tex. Crim. App. 1998)…………………………………… 43

*King v. State,* 953 S.W.2d 266 (Tex. Crim. App. 1997)………………………………………….. 43

*Maldonado v. State,* 998 S.W.2d 239 (Tex. Crim. App. 1999)…………………………………..28

*Malik v. State,* 953 S.W.2d 234 (Tex. Crim. App. 1997)…………………………………………45

*Malone v. State,* 253 S.W.3d 253 (Tex. Crim. App. 2008)……………………………………..24

*Matamoros v. State,* 901 S.W.2d 470 (Tex. Crim. App. 1995)…………………………………..27

*Meyer v. State,* 519 S.W.2d 868 (Tex. Crim. App. 1975)………………………………………..38

*Parker v. State,* 657 S.W.2d 137 (1983)…………………………………………………………..34

*Patrick v. State,* 906 S.W.2d 481 (Tex. Crime. App. 1995)……………………………………..28

*Plata v. State,* 926 S.W.2d 300, 304 (Tex. Crim. App. 1996)…………………………………..45

*Rey v. State,* 897 S.W.2d 333 (Tex. Crim. App. 1995)…………………………………………..28

*Sanchez v. State,* 209 S.W.3d 117 (Tex. Crim. App. 2006)……………………………………..47

*Santellan v. State,* 939 S.W.2d 155 (Tex. Crim. App. 1997)……………………………30, 36, 41

*Schutz v. State,* 63 S.W.3d 442 (Tex. Crim. App. 2001)……………………………………..43-44

*Shelby v. State,* 819 S.W.2d 544 (Tex. Crim. App. 1991)……………………………………35-39

*Simmons v. State,* 282 S.W.3d 504 (Tex. Crim. App. 2009)……………………………………25

*Simmons v. State,* 548 S.W.2d 386 (Tex. Crim. App. 1977)……………………………………..34, 38

*Skillern v. State,* 890 S.W.2d 849 (Tex. App. - Austin 1994, pet. ref'd)……………………… 28

*Smith v. State,* 109 S.W.3d 80 (Tex. App. - Texarkana 2003, no pet.)………………………….23

*Smith v. State,* 332 S.W.3d 425 (Tex. Crim. App. 2011)………………………………………..24-25

*Spain v. State,* 585 S.W.2d 705 (Tex. Crim. App. 1979)………………………………………..35

*Taylor v. State,* 146 S.W.3d 801 (Tex. App. - Texarkana 2004, pet. ref'd)……………………..47

*Tucker v. State,* 771 S.W.2d 523 (Tex. Crim. App. 1988), cert. denied, 492 U.S. 912,
       109 S.Ct. 3230, 106 L.Ed.2d 578 (1989)……………………………………………….26-27

*United States v. Mayer,* 556 F.2d 245 (5th Cir. 1977)…………………………………………..34, 38

*Werner v. State,* 711 S.W.2d 639 (Tex. Crim. App. 1986)………………………………………30, 36, 41

*Williams v. State,* 937 S.W.2d 479 (Tex. Crim. App. 1996)……………………………………..23

**STATUTES:**

TEX. CODE CRIM. PRO. art. 38.14……………………………………………………………24-25

TEX. PENAL CODE §19.02…………………………………………………………………… 28

TEX. PENAL CODE §19.03………………………………………………………………….. 8, 24, 26

TEX. PENAL CODE §29.02…………………………………………………………………..24

TEX. R. APP. P. 44.2……………………………………………………………………….. 43

TEX. R. EVID. 901………………………………………………………………………….41-43

IN THE SIXTH COURT OF APPEALS

TEXARKANA, TEXAS

---

**KENNEDY DEWAYNE RILEY,**

Appellant

**VS.**

**THE STATE OF TEXAS,**

Appellee

---

On Appeal from Cause No. 13F0131-202 in the
202nd Judicial District Court of Bowie County, Texas

---

# BRIEF OF APPELLANT

---

## STATEMENT OF THE CASE

*Nature of the case:*　This is an appeal from a conviction for the offense of Capital Murder pursuant to Texas Penal Code 19.03, a Capital Felony (C.R. 5, 19).

*Judge/Court:*　Hon. Leon F. Pesek, Jr., sitting in the 202nd Judicial District Court of Bowie County, Texas (C.R. 5; R.R. Vol. 1 pg. 1).

*Plea:*　Appellant entered a plea of "not guilty". (R.R. Vol. 4 pg. 11).

*Trial Disposition:*　The case was tried to a jury which found Appellant "guilty" of the offense of Capital Murder (R.R. Vol. 6 pg. 48). Punishment was automatically assessed at Life

without parole in the Institutional Division of the Texas Department of Criminal Justice since the State had earlier elected not to seek the death penalty.  (C.R. pg. 90; R.R. Vol. 6 pgs. 50, 52).

## ISSUES PRESENTED

**ISSUE NO. 1:** **The evidence was legally insufficient to support Appellant's conviction for Capital Murder**

**ISSUE NO. 2:** **The trial court erred when it denied Appellant's Motion for Instructed Verdict**

**ISSUE NO. 3:** **The Trial Court erred when it denied Appellant his right to cross examine Alicia Green regarding all aspects of her plea agreement with the State**

**ISSUE NO. 4:** **The Trial Court erred when it denied Appellant his right to cross examine Kennial Jacobs regarding her pending charge of Unauthorized Use of a Motor Vehicle**

**ISSUE NO. 5:** **The trial court erred when it admitted an audiotape tape allegedly containing a telephone conversation between Alicia Green and Appellant because a proper foundation for its admissibility was not established**

**ISSUE NO. 6.** **Appellant suffered egregious harm because the jury charge failed to properly apply the accomplice witness instruction in the abstract portion of the charge to the facts of the case in the application portion of the charge**

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would assist the Court in considering numerous issues raised in the Brief. More specifically, oral argument would be helpful in resolving fact intensive harm analysis issues.

## STATEMENT OF THE FACTS

Troydricus Lamar Robinson (hereinafter "Mr. Robinson") was found lying, and bleeding, in a grassy area adjacent to 1021 Brown Street, Wake Village, Texas, on the night of August 28, 2012. (R.R. Vol. 4 pgs. 57-58). Police officers were dispatched to the area pursuant to a 911 call from Joe Frost who resided at 1021 Brown Street. (R.R. Vol. 4 pgs. 23, 25). Prior to collapsing in the grassy area, Mr. Robinson had banged on Mr. Frost's front door leading Mr. Frost to believe that a home invasion was imminent. (R.R. Vol. 4 pg. 30).

Mr. Frost testified that, when he saw a police patrol unit coming down the street, he went outside and walked down his driveway and observed Mr. Robinson lying there. (R.R. Vol. 4 pgs. 33-34). Mr. Frost asked Mr. Robinson who had done this to him. (R.R. Vol. 4 pg. 46). Mr. Robinson replied "a woman and a man with a do-rag." (R.R. Vol. 4 pg. 46). Mr. Frost testified that Mr. Robinson said the actors had come into his home at 1024 Brown Street. (R.R. Vol. 4 pg. 46). Mr. Frost further testified that he did not initially tell police officers that Mr. Robinson had made any statements to him. (R.R. Vol. 4 pgs. 53-54).

Officer Rusty McDuffie testified that he arrived on the scene and observed Mr. Robinson laying in the grass near the curb at 1021 Brown Street. (R.R. Vol. 4 pg. 58). Officer McDuffie asked Mr. Robinson if he was okay, and Mr. Robinson replied that he had been shot. (R.R. Vol. 4 pg. 65). Mr. Robinson also told Officer McDuffie that "old boy, old girl set him up, he had been robbed." (R.R. Vol. 4 pg. 65). Officer Foster arrived shortly thereafter, and Officer McDuffie went across the street to clear the residence. (R.R. Vol. 4 pg. 74). Officer McDuffie further testified that his report did not include information that Mr. Robinson told the officer that an "old boy" had shot him. (R.R. Vol. 4 pg. 79). The only information concerning Mr. Robinson's

statements that Officer McDuffie included in his report was that Mr. Robinson stated a female had set him up. (R.R. Vol. 4 pg. 80).

Officer Jacob Foster arrived on the scene and observed a black male lying on his back in the yard at 1021 Brown Street. (R.R. Vol. 4 pg. 91). Officer Foster was able to observe a gunshot wound in Mr. Robinson's back. (R.R. Vol. 4 pg. 94). In response to questioning from Officer Foster, Mr. Robinson stated that "a black female wearing a purple shirt and stockings and a black male wearing a white tank-top, black shorts, and a black bandana, do-rag" had done this to him. (R.R. Vol. 4 pg. 94). Officer Foster further testified that Mr. Robinson stated that "she set me up, he shot me." (R.R. Vol. 4 pgs. 94-95).

James Guyton testified that he is the fire chief for the City of Wake Village. (R.R. Vol. 4 pg. 103). Mr. Guyton arrived on the scene and assisted the EMS personnel with placing a re-breather on Mr. Robinson. (R.R. Vol. 4 pg. 106). Mr. Guyton testified that Mr. Robinson told him "the bitch set me up." (R.R. Vol. 4 pg. 109). Mr. Guyton further testified that Mr. Robinson told him "he had on a bandana and a beater." (R.R. Vol. 4 pg. 109). Mr. Robinson attempted to give Mr. Guyton a name which sounded like "Tisha" to Mr. Guyton. (R.R. Vol. 4 pg. 110). Mr. Guyton testified that Mr. Robinson never stated whether the actor and/or actors were black or white. (R.R. Vol. 4 pg. 115).

Shameetrice Gomer testified that she knows Appellant through her boyfriend, LaJonte James. (R.R. Vol. 4 pg. 157). Appellant and Alicia Green came to Ms. Gomer's home on the evening of August 28, 2012, at approximately 9:00 p.m. (R.R. Vol. 4 pg. 159). Appellant and Ms. Green stayed for forty-five minutes to an hour and left. (R.R. Vol. 4 pg. 159). They arrived in Appellant's car. (R.R. Vol. 4 pgs. 160-61). Appellant was wearing a white tank-top with blue jean shorts, and Alicia was wearing leg tights. (R.R. Vol. 4 pg. 162).

-13-

Lajonte James also testified that Appellant and Alicia Green came to his home in Appellant's vehicle on August 28, 2012. (R.R. Vol. 4 pg. 174). Appellant and Ms. Green stayed for about forty-five minutes to an hour (R.R. Vol. 4 pg. 175). Mr. James received a telephone call from Appellant around 11:00 p.m. (R.R. Vol. 4 pg. 176). Appellant wanted Mr. James to pick him up, but Mr. James's car was in the paint shop. (R.R. Vol. 4 pg. 176). Mr. James read a portion of a letter for the jury that he had received from Appellant in which Appellant was attempting to remind him of the sequence of events on August 28, 2012 (although the State suggested it was an attempt to construct an alibi). (R.R. Vo. 4 pgs. 180-81). On cross-examination, Lajonte James admitted that he has no idea where Appellant went after Appellant left his home, and he has no evidence that Appellant was involved in the death of Mr. Robinson. (R.R. Vol. 4 pg. 183-84).

Gary Stringer testified that he is a retired police officer. (R.R. Vol. 4 pg. 192). Mr. Stringer's home is approximately two blocks away from 1024 Brown Street. (R.R. Vol. 4 pg. 195). Mr. Stringer saw a vehicle park in front of his neighbor's home across the street from Mr. Stringer's residence. (R.R. Vol. 4 pg. 196). Mr. Stringer observed a black male standing at the back of the vehicle. (R.R. Vol. 4 pg. 197). The black male was wearing a white tank-top and black shorts, and he appeared to be between 5'7" and 5'9" tall. (R.R. Vol. 4 pg. 198). Mr. Stringer testified that the vehicle he observed that night was a grayish Caprice with out of state license plates that ended in what looked like "Z67". (R.R. Vol. 4 pg. 200). Mr. Stringer identified State's Exhibit 34 as the vehicle he saw that night. (R.R. Vol. 4 pg. 200-01).

Dr. Janice Townsend-Parchman testified that she is forensic pathologist employed as a medical examiner by Dallas County. (R.R. Vol. 5 pg. 16). Dr. Townsend-Parchman testified that Mr. Robinson died as a result of a gunshot wound through the chest. (R.R. Vol. 5 pg. 19).

Ronny Sharp is the Chief of Police for the City of Wake Village. (R.R. Vol. 5 pg. 29). Chief Sharp was notified by Sgt. Jody Stubbs on August 28, 2012, that there had been a shooting at 1024 Brown Street. (R.R. Vol. 5 pg. 31). The officers on scene gave Chief Sharp an overview of what they knew at the time. (R.R. Vol. 5 pg. 31). Chief Sharp testified that a cell phone was recovered at the scene, so a grand jury subpoena was requested from the District Attorney's office to obtain the records from the cell phone. (R.R. Vol. 5 pg. 37). Chief Sharp was able to trace one particular phone number to Alicia Green. (R.R. Vol. 5 pgs. 37-38). Chief Sharp was able to make contact with Kennial Jacobs, who is Ms. Green's mother, and Ms. Jacobs confirmed the telephone number belonged to her daughter, Alicia Green. (R.R. Vol. 5 pgs. 38-39). Chief Sharp made contact with Ms. Jacobs at a residence owned by another of Ms. Jacobs's daughters, and while he was there Alicia Green and Appellant arrived in Appellant's vehicle. (R.R. Vol. 5 pgs. 39-40). Appellant and Ms. Green were interviewed at the Wake Village Police Department, and both denied involvement in the death of Mr. Robinson. (R.R. Vol. 5 pgs. 42-43). Because Ms. Green implicated her mother, Ms. Jacobs, in her movements on the night of Mr. Robinson's death, Chief Sharp interviewed Ms. Jacobs further about Ms. Green's activities on that night and she told Chief Sharp that Ms. Green's story was not true. (R.R. Vol. 5 pg. 45). Chief Sharp arrested Ms. Green on outstanding warrants out of Texarkana, Texas, and Ms. Green subsequently admitted that she and Appellant were both present at the scene. (R.R. Vol. 5 pg. 46). Chief Sharp obtained an arrest warrant for Appellant based upon the information provided to him by Ms. Green, and he was taken into custody a short time later on or about September 26, 2012. (R.R. Vol. 5 pg. 48). Chief Sharp interviewed Appellant at the Bi-State Justice Center, and portions of that recorded interview were played for jury. (R.R. Vol. 5 pgs. 53-54). Appellant did not provide Chief Sharp with any information as it related to Appellant's activities the night

-15-

of August 28, 2012. (R.R. Vol. 4 pg. 57). Chief Sharp was able to recover a "wife-beater" t-shirt from Ms. Jacobs who had advised Chief Sharp that the t-shirt was in the back of her vehicle. (R.R. Vol. 5 pgs. 58-59). Ms. Jacobs advised Chief Sharp that the t-shirt was in Appellant's possession on the night she picked up Appellant and Ms. Green in Wake Village. (R.R. Vol. 5 pg. 58). Chief Sharp also received into evidence a recorded telephone call from Ms. Green (who was still incarcerated at the Bi-State Justice Center) to Appellant. (R.R. Vol. 5 pg. 64)(the recording was not admitted into evidence or played during Chief Sharp's testimony)(R.R. Vol. 5 pg. 67). Chief Sharp testified that Alicia Green entered a plea of "guilty" to the offense of murder in relation to Mr. Robinson's death. (R.R. Vol. 5 pg. 67). Ms. Green agreed to a twenty year sentence. (R.R. Vol. 5 pg. 67).

On cross-examination, Chief Sharp admitted that the only witness he had who put Appellant inside the home at 1024 Brown Street was Alicia Green. (R.R. Vol. 5 pg. 69). Chief Sharp further admitted that his investigation was largely based upon the statements of Alicia Green and her mother, Kennial Jacobs, both of whom lied to him repeatedly. (R.R. Vol. 5 pgs. 74-75). Chief Sharp did not interview Appellant's mother, whom Appellant stated he was with that night. (R.R. Vol. 5 pg. 76). Chief Sharp could not testify that Appellant was driving his vehicle on the night of Mr. Robinson's death. (R.R. Vol. 5 pg. 79).

Alicia Green testified that she was the co-defendant in this case and that, based upon the support and advice of her attorney she changed her plea to "guilty" in exchange for a sentence of twenty years for the offense of murder. (R.R. Vol. 5 pg. 95). Ms. Green testified that the only individuals present at 1024 Brown Street on the night of August 28, 2012, were her, Appellant, and Mr. Robinson. (R.R. Vol. 5 pg. 100). Ms. Green was shown State's Exhibit 34, and she identified it as Appellant's vehicle. (R.R. Vol. 5 pgs. 101-02). Ms. Green testified that she was

with Appellant all day on August 28, 2012. (R.R. Vol. 5 pg. 103). There was a discussion about locating marijuana to smoke, and Ms. Green thought about Mr. Robinson as a possible source. (R.R. Vol. 5 pg. 103). Ms. Green testified that Mr. Robinson agreed to provide her with marijuana in exchange for sex. (R.R. Vol. 5 pg. 104). Ms. Green testified that Appellant was upset when he learned that Mr. Robinson wanted to trade marijuana for sex. (R.R. Vol. 5 pg. 104). A plan was developed for Ms. Green to "chill" with Mr. Robinson and try to find out where he kept his "stash". (R.R. Vol. 5 pg. 105). Ms. Green testified that the plan was for Mr. Robinson to be robbed of his "stash", i.e. money and/or drugs. (R.R. Vol. 5 pg. 105). Ms. Green testified that Appellant actively participated in setting up this plan. (R.R. Vol. 5 pg. 105). Ms. Green testified to some doubts about the success of the plan since Mr. Robinson knew her, but Appellant stated he would have to shoot him. (R.R. Vol. 5 pg. 106). Ms. Green and Appellant went to Lajonte James's ("Pep") apartment around 9:30, and they stayed for about 30 minutes. (R.R. Vol. 5 pg. 107). After they left, contact was made with Mr. Robinson, and he gave Ms. Green the address where he was staying. (R.R. Vol. 5 pg. 108). Ms. Green and Appellant drove by the house "scoping it out", and Appellant stated "this is the lick right here." (R.R. Vol. 5 pg. 108). Ms. Green testified that language meant they were going to rob the house. (R.R. Vol. 5 pg. 109). Appellant dropped Ms. Green off at the house, and drove off. (R.R. Vol. 5 pg. 110). Ms. Green went inside and smoke a "blunt". (R.R. Vol. 5 pg. 110). Ms. Green continued to text both Mr. Robinson (even though she was sitting next to him on the couch) and Appellant. (R.R. Vol. 5 pgs. 111-12). Appellant came through the back door with a gun pointed at Mr. Robinson, and he demanded that Mr. Robinson get on the ground. (R.R. Vol. 5 pg. 113). Ms. Green testified that Appellant was wearing a "white wife-beater with some black shorts." (R.R. Vol. 5 pg. 114). Ms. Green testified that money was demanded from Mr. Robinson, but he stated he only had forty

-17-

dollars.  (R.R. Vol. 5 pg. 116).  It became apparent, according to Ms. Green, that she and Appellant knew each other.  (R.R. Vol. 5 pg. 117).  Ms. Green testified that Mr. Robinson got up and ran towards the front door, and Appellant shot him.  (R.R. Vol. 5 pg. 117).  Both Ms. Green and Appellant ran out the back door.  (R.R. Vol. 5 pg. 119).  They both ran until they ended up on Guam Street next to some apartments.  (R.R. Vol. 5 pg. 121).  They ended up near a gym.  (R.R. Vol. 5 pg. 122).  Appellant called Lajonte James to come get them, but Mr. James would not come out there.  (R.R. Vol. 5 pg. 125).  Ms. Green called her mother to come get them.  (R.R. Vol. 5 pg. 125).  Ms. Green's mother arrived in a blue Blazer.  (R.R. Vol. 5 pg. 126).  Ms. Green testified that Appellant took off his shirt and put on another shirt.  (R.R. Vol. 5 pg. 127).  Appellant put the "wife-beater" in the back of the truck.  (R.R. Vol. 5 pg. 127).  Ms. Jacobs took Appellant to retrieve his car on Brown Street.  (R.R. Vol. 5 pg. 128).  Appellant drove off with Ms. Jacobs following him.  (R.R. Vol. 5 pg. 129).  Appellant stopped on New Boston Road near a Family Dollar store, and Ms. Green got back into Appellant's car.  (R.R. Vol. 5 pg. 129).  The next morning, Appellant dropped Ms. Green off at her sister's house.  (R.R. Vol. 5 pg. 130).  Ms. Green testified about being arrested for some old traffic tickets, speaking with Chief Sharp, and calling Appellant from the Bi-State Justice Center.  (R.R. Vol. 5 pg. 131-32).  A recording of the telephone call was played for the jury.  (R.R. Vol. 5 pg. 134-35).

On cross-examination Ms. Green testified that she knew her mother labeled her a habitual liar.  (R.R. Vol. 5 pg. 136).  Ms. Green testified that her mother does not like Appellant.  (R.R. Vol. 5 pg. 136).  Ms. Green also testified that she had not previously mentioned that Appellant had changed shirts.  (R.R. Vol. 5 pg. 137).

Kennial Jacobs testified that she saw Appellant and Ms. Green together on August 28, 2012.  (R.R. Vol. 5 pg. 159).  Ms. Jacobs testified that Ms. Green called her about 9:00 or 10:00

-18-

that night to come pick her and Appellant up in Wake Village. (R.R. Vol. 5 pg. 160). Ms. Green stated they were on Guam Street. (R.R. Vol. 5 pg. 160-61). Ms. Green got in the front seat, and Appellant got in the back. (R.R. Vol. 5 pg. 162). Ms. Green was wearing black tights and a light top, and Appellant was wearing dark blue jean shorts and a white "wife-beater". (R.R. Vol. 5 pg. 162). Appellant took off his tank top and put on another shirt. (R.R. Vol. 5 pg. 163). Appellant began giving Ms. Jacobs directions to where his car was parked on Brown Street. (R.R. Vol. 5 pgs. 164-65). Appellant retrieved his car, and Ms. Jacobs followed him back up Westlawn Drive until he stopped and Ms. Green got back into Appellant's car with him. (R.R. Vol. 5 pgs. 165-66). Ms. Jacobs gave Chief Sharp a statement, and she told Chief Sharp that Ms. Green had lied to him about her whereabouts. (R.R. Vol. 5 pgs. 168-69).

On cross-examination Ms. Jacobs testified that she does not like Appellant, and she wanted him to stay away from her daughter. (R.R. Vol. 5 pgs. 173-74). She also testified that she would do whatever it took to keep him away from her daughter. (R.R. Vol. 5 pg. 174).

## SUMMARY OF THE ARGUMENT

**ISSUE NO. 1:   The evidence was legally insufficient to support Appellant's conviction for Capital Murder**

**ISSUE NO. 2:   The trial court erred when it denied Appellant's Motion for Instructed Verdict**

After eliminating the testimony of Alicia Green from consideration because she was an accomplice as a matter of law, the alleged corroborating evidence is insufficient as tending to connect Appellant to the offense and likely would only suggest his "mere presence" in the area. Likewise, the State failed to meet its burden of proof in terms of the underlying offense of robbery because the record is almost entirely devoid of any evidence, apart from Alicia Green's testimony, tending to suggest a robbery and/or tending to establish the specific intent required to prove a robbery.

**ISSUE NO. 3:   The Trial Court erred when it denied Appellant his right to cross examine Alicia Green regarding all aspects of her plea agreement with the State**

The State was permitted to leave the jury with a false impression that Alicia Green agreed to testify for the State without any preconceived ideas or information as to what she would receive in return for her favorable testimony.  Appellant was denied his right to effectively cross examine Alicia Green to fully expose her bias and motive to testify favorably for the State.  The error was harmful beyond a reasonable doubt because a conviction would not have been possible without Alicia Green's testimony.

**ISSUE NO. 4:   The Trial Court erred when it denied Appellant his right to cross examine Kennial Jacobs regarding her pending charge of Unauthorized Use of a Motor Vehicle**

Kennial Jacobs was the second most important witness to the State's case, and Appellant was denied his right to impeach her credibility by cross examining her about her pending charge

of unauthorized use of a motor vehicle. Appellant should have been allowed great latitude in showing any fact that would tend to establish bias or motive to testify favorably for the State. Although the trial court had a transcript of the previous trial and stated that Ms. Jacobs' testimony was consistent with it, the jury is the judge of witness demeanor and credibility. Because the jury could not have known of her previous testimony, the trial court erred, and its error was harmful beyond a reasonable doubt because Ms. Jacobs was the only witness who could corroborate key parts of Alicia Green's testimony, and Ms. Jacobs' testimony contributed significantly to Appellant's conviction.

**ISSUE NO. 5:    The trial court erred when it admitted an audiotape tape allegedly containing a telephone conversation between Alicia Green and Appellant because a proper foundation for its admissibility was not established**

The State failed to properly authenticate the telephone recording of an alleged conversation between Alicia Green and Appellant. Chief Sharp first testified that he had listened to the recording, that it was recorded on a device capable of making an accurate recording and that it was an accurate recording, and the voices on the tape were those of Alicia Green and Appellant. Chief Sharp then completely contradicted himself when defense counsel took him on voir dire by testifying that he had no personal knowledge of most of the testimony he had just given on direct examination. Although Alicia Green testified that it was a telephone conversation between Appellant and her, her testimony should be set aside in the court's review of this issue because she was an accomplice as a matter of law, and her testimony is inherently untrustworthy. There is insufficient corroborating evidence to authenticate the telephone recording, and the trial court erred in admitting it. The admission of the recording was harmful to Appellant beyond a reasonable doubt.

**ISSUE NO. 6.    Appellant suffered egregious harm because the jury charge failed to properly apply the accomplice witness instruction in the abstract portion of the charge to the facts of the case in the application portion of the charge**

The jury charge was confusing with its various legal definitions and *mens rea's*.  The jury charge failed to instruct the jury in the application paragraphs how it was to properly apply the law given to it in the abstract paragraphs in terms of Alicia Green's testimony and any alleged corroborating evidence.  This error in the jury charge egregiously harmed Appellant because he could not have been convicted without Alicia Green's testimony.

## ARGUMENT

**ISSUE NO. 1:  The evidence was legally insufficient to support Appellant's conviction for Capital Murder**

**ISSUE NO. 2:   The trial court erred when it denied Appellant's Motion for Instructed Verdict**

### 1.      Standard of Review

Appellate courts should no longer conduct separate legal and factual sufficiency reviews in criminal cases.   *See Brooks v. State,* 323 S.W.3d 893 (Tex. Crime. App. 2010).   Rather, appellate courts in criminal cases should simply conduct the sufficiency standard under *Jackson v. Virginia, 443 U.S. 307 (1979). Brooks, 323 S.W.3d at 893.*   Under a legal-sufficiency review, the reviewing court must view the evidence in the light most favorable to the jury's verdict and then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *See Jackson,* 443 U.S. at 319.   This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."   *Id.* Faced with a record of historical facts that support conflicting inferences, the reviewing court "must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."   *See Jackson,* 443 U.S. at 326.   A "mere modicum" of incriminating evidence cannot "by itself rationally support a conviction beyond a reasonable doubt."   *See Jackson,* 443 U.S. at 319.

In terms of a motion for instructed verdict, "[a] point of error complaining about a trial court's failure to grant a motion for directed verdict is a challenge to the legal sufficiency of the evidence.  *Williams v. State,* 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Smith v. State,* 109 S.W.3d 80, 81 (Tex. App. - Texarkana 2003, no pet.).

-23-

### 2. Argument and Analysis

#### (a) Elements of the offense

A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PENAL CODE §19.03(a)(2).

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE 29.02.

#### (b) Accomplice witness rule

Article 38.14 of the Texas Code of Criminal Procedure states that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX CODE CRIM. PRO. art. 38.14.

In this case, Alicia Green was an accomplice as a matter of law. (R.R. Vol. 6 pg. 13)(C.R. 66).

In reviewing the sufficiency of the corroborating evidence, the reviewing court is to exclude the accomplice testimony from consideration and determine whether there is any independent evidence that tends to connect the defendant with the commission of the offense. *Malone v. State,* 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). The corroborating evidence is viewed in the light most favorable to the jury's verdict. *Brown v. State,* 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). If there are two views of the evidence, one tending to connect the accused to the offense and the other not, the reviewing court is to defer to the jury's view. *Smith v. State,* 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). "[I]t is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Id.* It is not necessary that

-24-

corroborating evidence directly connect a defendant to an offense or be sufficient by itself to establish guilt. *Cathey v. State,* 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The evidence must simply link the accused in some way to the commission of the offense and show that rational jurors could conclude that the evidence sufficiently tended to connect the accused to the offense. *Simmons v. State,* 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). The corroborating evidence may be direct or circumstantial. *See Smith,* 332 S.W.3d at 442.

(c) **Any alleged corroborating evidence is insufficient to support Appellant's conviction**

There is insufficient evidence to connect Appellant to the offense of capital murder. After eliminating the testimony of Alicia Green from consideration the State can only show mere presence in the area of the alleged offense. The alleged corroborating evidence that *tends to connect Appellant to the crime* is insufficient. *See Cox v. State,* 830 S.W.2d 609 (Tex. Crim. App. 1992); TEX. CODE CRIM. PRO. art. 38.14.

Gary Stringer testified that he observed a vehicle, which he identified at trial as Appellant's vehicle, parked across the street from his home. (R.R. Vol. 4 pgs. 200-01).

Kennial Jacobs testified that she picked up her daughter, Alicia Green, and Appellant in another area of Wake Village on the night of the alleged offense and took them back to Appellant's vehicle on Brown Street. (R.R. Vol. 5 pgs. 160-62).

Mere presence of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony. *Golden v. State,* 851 S.W.2d 291, 294 (Tex. Crime. App. 1993). Chief Ronny Sharp testified that the only evidence he had that places Appellant inside of Mr. Robinson's home was the statement of Alicia Green. (R.R. Vol. 5 pg. 69).

The other alleged corroborating evidence is, likewise, insufficient:

**1)  Statements from Troydricus Robinson that an "old boy" and an "old girl" set him up, he had been robbed; it was a "woman and a man with a do-rag"; that "she set me up, he shot me"; that the female was wearing a purple shirt and stockings and the male was wearing a white tank top, black shorts, and a bandana or do-rag; and that "the b\*\*\*\* set me up".**

Disregarding the testimony of Alicia Green, none of these statements tend to connect Appellant to the offense.   On the contrary, Troydricus Robinson's statements tend to show, at best, only that an unknown male and female committed the offense.

**2)  Testimony that Appellant and Alicia Green were together before and after the offense.**

This testimony does not tend to connect Appellant to the offense because Alicia Green and Appellant were in a relationship (R.R. Vol. 5 pgs. 97-98) so it would not be out of the ordinary for them to be together at those times.

**3) Appellant is alleged to have been wearing similar clothing to the perpetrator.**

This evidence is insufficient because, although Appellant may have been wearing similar clothing on the day of the offense, there is other testimony in the record that establishes that type of clothing is common attire in the summertime (R.R. Vol. 4 pgs. 99-100).

Furthermore, there was no evidence of Appellant's intent and no evidence apart from the testimony of Alicia Green that Appellant possessed a gun (as tending to suggest an "intent") on the date of the offense.  In a prosecution for capital murder under penal code section 19.03(a)(2), in order to convict the accused . . . the State must prove and the jury must find that he "intentionally commit[ted] the murder" in the course of the underlying felony.   TEX. PENAL CODE § 19.03(a)(2); *Tucker v. State,* 771 S.W.2d 523, 530 (Tex. Crim. App. 1988), cert. denied, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989); *Barnes v. State,* 56 S.W.3d 221, 226 (Tex.App.-Fort Worth 2001, pet. ref'd).  The court of criminal appeals has held that "[o]ne could

hardly indulge an intent to promote or assist in the commission of an intentional murder without, at a minimum, intending or contemplating that lethal force would be used." *Barnes,* 56 S.W.3d at 236 (citing *Tucker,* 771 S.W.2d at 530). Setting aside the testimony of Alicia Green as this court is required to do, there is no evidence of Appellant's intent to commit murder or the underlying offense of robbery.

Based upon the insufficiency of the evidence in this matter, this Court should order an acquittal. Where the reviewing court finds that there was insufficient evidence, apart from the accomplice testimony, to tend to connect the defendant to the crime, the accomplice testimony must be disregarded, and the court must order acquittal. *See Ex Parte Reynolds,* 588 S.W.2d 900, 902 (Tex. Crim. App. 1979), cert. denied *Texas v. Reynolds,* 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980).

### (d) There is insufficient evidence of the underlying offense of Robbery

In the alternative, no evidence was presented by the State to satisfy its burden to prove the underlying offense of robbery. Again, setting aside the testimony of Alicia Green, the only mention of "robbery" in the record was from Mr. Robinson when he stated, "old boy, old girl set him up, he had been robbed." (R.R. Vol. 4 pg. 72). Furthermore, Mr. Robinson's statements that he had been "set up" (R.R. Vol. 4 pg. 5) do not rise to the level of proof required of the State because that statement could be subject to any of a number of interpretations.

In capital murder offenses committed during the course of robbery the legal . . . sufficiency standard applies to both the charged and underlying offenses. See *Matamoros v. State,* 901 S.W.2d 470, 474 (Tex. Crim. App. 1995); *Brewer v. State,* 126 S.W.3d 295, 297 (Tex. App. - Beaumont 2004, pet. ref'd). To establish the murder portion of the charged offense, the State must prove beyond a reasonable doubt that the defendant intentionally or knowingly caused

the death of an individual charged in the indictment. TEX. PENAL CODE §19.02(a); *Rey v. State,* 897 S.W.2d 333, 340 n.7 (Tex. Crim. App. 1995); *Brewer,* 126 S.W.3d at 297.

To establish capital murder committed during the course of a robbery, the prosecution must prove beyond a reasonable doubt, in addition to the alleged murder, that the defendant possessed a specific intent to obtain or maintain control of the victim's property either before or during the commission of the offense. *Maldonado v. State,* 998 S.W.2d 239, 243 (Tex. Crim. App. 1999). Proof of a completed theft is not required. *Bustamante v. State,* 106 S.W.3d 738, 740 (Tex. Crim. App. 2003); *Maldonado,* 998 S.W.2d at 243.

Intent may be inferred from the acts, words, and conduct of the accused. See *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Patrick v. State,* 906 S.W.2d 481, 487 (Tex. Crime. App. 1995); *Dues v. State,* 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). Mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred. See *Dillion v. State,* 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Skillern v. State,* 890 S.W.2d 849, 880 (Tex. App. - Austin 1994, pet. ref'd). Thus, the jury may infer the requisite intent to rob from the conduct of the accused. *Conner v. State,* 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

The record is almost entirely devoid of any evidence, direct or circumstantial, of Appellant's intent to commit the underlying offense of robbery. Indeed, the only evidence may be in the form of Mr. Robinson's statement, admitted into evidence as a dying declaration, that "old boy, old girl had set him up, he had been robbed." (R.R. Vol. 4, pg. 65). Furthermore, even though the State was not required to prove a completed theft, it presented no evidence apart from the testimony of Alicia Green that a theft was even attempted. Indeed, the only evidence

-28-

presented that related to the forty dollars that Mr. Robinson supposedly had was from the testimony of Alicia Green.

The State went to great lengths in its closing argument to stress that this whole matter occurred over that same forty dollars:

> And you want to now how cold-blooded he is? Think about what Alicia told you when they were driving around in his car. She said, well, I mentioned to him about Troy, but he knows me; this plan isn't going to work, he knows me. And what did this man say? I'll just have to shoot him. It does not get any colder [than] that. He knew at that moment, I'm going to kill somebody tonight. He knew it. He didn't bust in the back door without his weapon out. He busted in that door with his weapon pointed at Troy Robinson. That was the first thing he did. And when he pointed his gun at that man, Troy did everything he could to comply. He had him down on the floor, hands out. Where's the money, where's the money? Man, I've just got forty dollars.
>
> Ladies and gentlemen, the senseless nature of this crime is sickening. Forty dollars wasn't enough for this man. He saw a big fancy house. He thought he lived there. Oh, there's plenty of money here. Show me the money.

There is not a scintilla of evidence in the record to support the State's argument other than the testimony of Alicia Green.

Finally, the fact that Mr. Robinson apparently used the term "robbed" in response to questioning from Officer McDuffie (R.R. Vol. 4 pg. 65) does not prove that he *was* robbed beyond a reasonable doubt. Again, there was no evidence of a theft or an attempted theft besides the testimony of Alicia Green. The police did not recover any stolen property, nor did they discover any property missing from 1024 Brown Street.

Because the State failed to meet its burden of proof on the underlying offense of robbery, this Court should order that Appellant be acquitted of the offense of capital murder.

-29-

**ISSUE NO. 3:** **The Trial Court erred when it denied Appellant his right to cross examine Alicia Green regarding all aspects of her plea agreement with the State**

**1.     Standard of Review**

The determination of admissibility of evidence is within the sound discretion of the trial court, and will not be reversed on appeal unless a clear abuse of discretion is shown. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex. Crim. App. 1979); *Werner v. State,* 711 S.W.2d 639, 643 (Tex. Crim. App. 1986; *Johnson v. State,* 698 S.W.2d 154, 160 (Tex. Crim. App. 1985), *cert. denied,* 107 S.Ct. 239 (1986). An appellate court should not find such an abuse of discretion if the trial court's ruling was within the "zone of reasonable disagreement." *Santellan v. State,* 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

**2.     Argument and Analysis**

**(a)     The trial court improperly denied Appellant's right to fully expose the bias and motive to testify favorably for the State of the key witness who made Appellant's conviction possible.**

The State elicited testimony from Alicia Green regarding her plea agreement that left a false impression with the jury:

Q.     Did you, upon having the support and advice of counsel, and I believe it was Jason Horton, did you make the decision to change your plea from not guilty to guilty to the charge of murder and serve a twenty year sentence in the state penitentiary?

A.     Yes, sir.

Q.     And was that decision made by you and your attorney prior to any discussion with me or any member from the Bowie County District Attorney's Office?

A.     I'm sorry, what?

Q.     Before — in other words, I want to make sure it's understood that you didn't talk to me—.

MR. SHUMAKER:     I'll object to leading, Judge.

-30-

MR. SHEPHERD:    I'll rephrase it.

Q.    (Mr. Shepherd)    Did you tell me your story before or after you entered your plea of guilty?

A.    After I entered my plea of guilty.

Q.    All right.  I want to make sure the jury understands that you and I had no conversation —

A.    Right.

Q.    — until you and your lawyer decided to change your plea.  Is that correct?

A.    Yes, sir, that's correct.

Q.    And at no point in time did I try to influence you prior to your agreement that you made to change your plea?

A.    No, sir.

Q.    As it relates to the information that you gave after you entered your plea, what was the only demand I made to you when we talked?

A.    You told me to just tell the truth.

Q.    And is that what you're here to do today?

A.    Yes, sir.

Q.    And when we spoke after you entered your plea, was your attorney, Jason Horton, present at that time?

A.    Yes, sir.

Q.    And in fact, we spoke I believe on several occasions that we made sure he was present.  Is that correct?

A.    Right.  Yes, sir.

Q.    Your rights have been protected throughout this process.  Is that correct?

A.    Yes, sir.  (R.R. Vol. 5 pgs. 95-97).

-31-

Upon cross-examination, defense counsel attempted to follow up on this line of questioning:

Q. Okay. Mr. Shepherd just asked you did you ever talk to him before you pled guilty and you said no.

A. Right

Q. Did you ever authorize your attorney to advise the DA —?

MR. SHEPHERD: Your Honor, the State is going to object to any conversation regarding — I believe we need to approach on this matter, Judge. I don't want to put this in front of the jury.

THE COURT: All right.

(Bench Conference:)

MR. SHEPHERD: The State is objecting to Mr. Shumaker getting into any negotiation as it relates to me, her lawyer, and herself. This Court has already ruled that the final agreement, that matter is before this jury. Nothing in regard to any conversations leading up to negotiations or anything else is proper before this jury, Judge.

MR. SHUMAKER: I think, Judge, I'm entitled to — she stated that she never talked to him about taking a deal before she testified. I'm entitled to ask her did she ever authorize anybody to tell Mr. Shepherd she would testify in return for a twenty year sentence. That is part of the plea bargain.

THE COURT: That she's got an agreement with him but you're not allowed to go into the process of it. Have you got any authority showing you can? Because I've never seen any authority that says that.

MR. SHUMAKER: *Virts* says I can get into plea negotiations.

THE COURT: No, it doesn't.

MR. SHEPHERD: That's the same argument they've already —.

MR. SHUMAKER: Well, that's what I think *Virts* says, Judge, but I may be incorrect.

-32-

THE COURT: I don't think that's what it says. It says you're allowed to go into the fact that there was an agreement reached and what the nature of that agreement was.

MR. SHUMAKER: But she's — they're giving the impression to this jury, Judge, that this lady came and testified without anybody agreeing to a twenty year sentence before she testified, and I'm entitled to ask her if anybody agreed to that prior to her testimony. That could be giving the jury a false impression of her testimony.

THE COURT: If you find some authority that allows you to do that, you can provide it to me, but right now I'm not aware of any authority that allows you to do that.

MR. SHUMAKER: So is the Court going to prohibit me from questioning her anything about that?

THE COURT: Well, you can keep asking her other questions. You've got two other lawyers sitting over there. If they can provide some authority on that, I'll certainly be glad to look at it.

MR. SHUMAKER: I don't think we can find any authority during the middle of a trial, Judge.

THE COURT: Well, I mean, that's what you're left with. You've got two people just sitting there. They can —.

MR. SHUMAKER: Well, I mean, is the Court telling me — is the Court sustaining the State's objection that I can't get into that?

THE COURT: I'll give you the opportunity to provide me some authority. But if you can't, them I'm sustaining the objection. You've got three iPads over there. It certainly seems to me that they can start doing some research. If you don't want to, you're choosing to waive the argument.

MR. SHUMAKER: I'm not choosing to waive any argument, Judge.

THE COURT: Well, then I suggest you get busy.

MR. SHUMAKER: I assert that *Virts* is our authority and we'll rely on *Virts*.

THE COURT: Okay. (R.R. Vol. 5 pgs. 139-142).

-33-

Cross-examination of a witness in matters pertinent to [her] credibility ought to be given the largest possible scope. *United States v. Mayer,* 556 F.2d 245 (5th Cir. 1977). This is especially true where a prosecution witness has had prior dealings with the prosecutor or other law enforcement officials, so that the possibility exists that [her] testimony was motivated by a desire to please the prosecution in exchange for the prosecutor's actions in having some or all of the charges against the witness dropped, securing immunity against prosecution, or attempting to assure that the witness received lenient treatment in sentencing. *Mayer,* 556 F.2d at 248-49.

The well-established rule is that " . . . great latitude is allowed the accused in showing any fact . . . which would tend to establish ill feeling, bias, motive, or animus on the part of any witness testifying against him." *Simmons v. State,* 548 S.W.2d 386 (Tex. Crim. App. 1977).

Appellant should have been allowed to fully cross examine Ms. Green regarding all aspects of her plea agreement, including negotiations, with the State in order to place her in her proper perspective before the jury. Ms. Green's testimony was material and relevant because Ms. Green was an accomplice as a matter of law, and the State had little, if any, chance of meeting its burden of proof without her testimony. It is well established that the Appellant was entitled to know the terms of any agreement or "deal" with the prosecution. However, the inquiry should not stop there because it is the witness' state of mind or possible expectations that are the crucial issue, not the formal terms of the agreement or "deal".

In *Parker v. State,* 657 S.W.2d 137 (1983), a case that involved an alleged plea agreement, Presiding Judge Onion noted that the failure of the trial court to allow cross examination regarding the existence of a plea agreement and the circumstances leading up to it amounted to reversible error. Indeed, he wrote that "[i]t has been held that the erroneous denial of this right of confrontation is "constitutional error of the first magnitude and no amount of

showing of want of prejudice [will] cure it." *See also* Davis v. Alaska, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, (1974); *Spain v. State,* 585 S.W.2d 705, 710 (Tex. Crim. App. 1979).

**(b)      This error was harmful beyond a reasonable doubt because, without Alicia Green's testimony, the State would not have been able to meet its burden of proof**

The Court of Criminal Appeals addressed improper denial of the right to cross examination in *Shelby v. State,* 819 S.W.2d 544 (Tex. Crim. App. 1991). In *Shelby,* the Court adopted the Sixth Amendment test to determine when the denial of cross examination requires reversal. Citing *Delaware v. Van Arsdall,* 475 U.S. 673 (1986), the Court first examined the potential harm of limiting cross examination. Next, the Court reviewed the error, considering the following factors:

**1.      The importance of the witness' testimony in the prosecution's case**

In the instant case, the importance of Alicia Green's testimony simply cannot be overstated. Her testimony, along with her mother's (Kennial Jacobs) testimony, resulted in Appellant's conviction. Without Alicia Green's testimony, a conviction simply would not have been possible.

**2.      Whether the testimony was cumulative**

The testimony was not cumulative of any other testimony in the case. Alicia Green is the witness who allegedly gave the prosecution the "full" story as to the events that transpired on the night of the offense. No other witness could duplicate her testimony.

**3.      The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points**

With respect to material points, the only other witness who could corroborate, in part, the testimony of Alicia Green was Kennial Jacobs. The other corroborating evidence is extremely weak.

**4.      The extent of cross examination otherwise permitted**

Other than this issue, defense counsel was allowed to fully cross examine Alicia Green.

**5.      The overall strength of the prosecution's case**

The prosecution's case was extremely weak without the testimony of Alicia Green. Again, her testimony was so important that a conviction could not have been had without it.

The trial court's error in limiting Appellant's right to cross examine Alicia Green regarding all aspects of her plea agreement with the State was harmful beyond a reasonable doubt.

This Honorable Court should reverse the Judgment of the trial court and order a new trial for Appellant.

**ISSUE NO. 4: The Trial Court erred when it denied Appellant his right to cross examine Kennial Jacobs regarding her pending charge of Unauthorized Use of a Motor Vehicle**

**1.      Standard of Review**

The determination of admissibility of evidence is within the sound discretion of the trial court, and will not be reversed on appeal unless a clear abuse of discretion is shown. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex. Crim. App. 1979); *Werner v. State,* 711 S.W.2d 639, 643 (Tex. Crim. App. 1986; *Johnson v. State,* 698 S.W.2d 154, 160 (Tex. Crim. App. 1985), *cert. denied,* 107 S.Ct. 239 (1986). An appellate court should not find such an abuse of discretion if the trial court's ruling was within the "zone of reasonable disagreement." *Santellan v. State,* 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

## 2. Argument and Analysis

**(a) The trial court improperly denied Appellant's right to effectively cross examine Kennial Jacobs to fully expose her bias and motive to testify favorably for the State**

Kennial Jacobs was the second most important witness to testify in Appellant's trial, and she was the only other witness who could corroborate, in part, Alicia Green's testimony.

When cross examination of Kennial Jacobs commenced, the following exchange occurred:

MR. SHUMAKER: Can we approach, Judge?

(Bench Conference:)

MR. SHUMAKER: Judge, this witness [Kennial Jacobs] has an unauthorized use of a motor vehicle charge pending against her in this Court that was referred to the grand jury in August of 2014. Nothing has been done on that charge. It's my position that I think I can ask this witness about that because that could be bias to testify for the State. They're holding a charge over her that could put her in the penitentiary, and there's been absolutely nothing done on that charge for about a year.

THE COURT: Response?

MS. SUTTON: Your Honor, obviously, this is not a conviction to be used for impeachment. Our position is that her testimony today is consistent with what it was previously. This incident he's talking about has happened in the interim, and any prejudicial effect outweighs any probative value.

THE COURT: All right. The Court is going to overrule the Defendant's objections on the basis of, one, the Court followed her testimony and it's the exact testimony she gave when she previously testified. Before this trial, she testified consistently with it. She testified voluntarily at that trial. Her position has not changed any since the first trial, so any probative value would be outweighed by the prejudicial effect.

MR. SHUMAKER: So you're saying I cannot get into it? Is that correct?

THE COURT: Well, because it's not a final conviction under 609. (R.R. Vol. 5 pgs. 171-72).

-37-

Cross-examination of a witness in matters pertinent to [her] credibility ought to be given the largest possible scope. *United States v. Mayer,* 556 F.2d 245 (5th Cir. 1977). This is especially true where a prosecution witness has had prior dealings with the prosecutor or other law enforcement officials, so that the possibility exists that [her] testimony was motivated by a desire to please the prosecution in exchange for the prosecutor's actions in having some or all of the changes against the witness dropped, securing immunity against prosecution, or attempting to assure that the witness received lenient treatment in sentencing. *Mayer,* 556 F.2d at 248-49.

The well-established rule is that " . . . great latitude is allowed the accused in showing any fact . . . which would tend to establish ill feeling, bias, motive, or animus on the part of any witness testifying against him." *Simmons v. State,* 548 S.W.2d 386 (Tex. Crim. App. 1977).

In *Simmons, supra,* the trial court refused to allow defense counsel to cross examine a witness about his prior arrests for the purpose of showing bias towards the prosecutor's office on the part of the witness. The court in Simmons noted that murder convictions were overturned in *Meyer v. State,* 519 S.W.2d 868 (Tex. Crim. App. 1975) and *Burkhalter v. State,* 493 S.W.2d 214 (Tex. Crim. App. 1973) because the defendants in those cases were prevented from showing the potential bias of the State's main witnesses in terms of pending indictments and/or promises of leniency.

The *Simmons* court agreed with the *Davis* court when it found that "[t]he denial of the right of effective cross examination in this case is constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111.

The prosecution in the instant case argued, and the trial court found, that Ms. Jacobs' testimony was consistent with her testimony in the first trial. However, this reasoning is

unpersuasive and illogical because the jury certainly was not allowed to know that fact and, of course, could not have had the benefit of the first trial transcript. It is the jury's duty to judge witness demeanor and credibility based upon what is presented inside the courtroom. Preventing the jury from hearing otherwise admissible testimony simply because the trial court had the benefit of a transcript from a previous proceeding improperly intruded upon the province of the jury in assessing Kennial Jacobs' credibility, bias, and motive to testify for the State.

**(b)** **The error was harmful beyond a reasonable doubt because Kennial Jacobs testified she picked up Appellant and Alicia Green in another part of Wake Village and returned them to Appellant's vehicle where it was parked just down the street from the scene of the offense**

The Court of Criminal Appeals addressed improper denial of the right to cross examination in *Shelby v. State,* 819 S.W.2d 544 (Tex. Crim. App. 1991). In *Shelby,* the Court adopted the Sixth Amendment test to determine when the denial of cross examination requires reversal. Citing *Delaware v. Van Arsdall,* 475 U.S. 673 (1986), the Court first examined the potential harm of limiting cross examination. Next, the Court reviewed the error, considering the following factors:

**1.** **The importance of the witness' testimony in the prosecution's case**

In the instant case, it could be argued that Kennial Jacobs was the second most important witness the State presented because her testimony corroborated Alicia Green's testimony (in part) by allegedly placing Appellant in the Wake Village area near the time of the offense. Furthermore, she testified that she picked up Appellant and Alicia Green and returned Appellant to his vehicle just a couple of blocks down Brown Street from the scene of the offense. Her testimony, along with her Alicia Green's testimony, resulted in Appellant's conviction.

**2. Whether the testimony was cumulative**

The testimony was partly cumulative of Alicia Green's testimony, but it was still highly significant to the State because it purported to corroborate parts of Alicia Green's testimony placing Appellant in the area of the offense near the time that the offense was committed.

**3. The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points**

With respect to material points, the only other witness who could corroborate, in part, the testimony of Kennial Jacobs was Alicia Green. The other corroborating evidence is extremely weak.

**4. The extent of cross examination otherwise permitted**

Other than this issue, defense counsel was allowed to fully cross examine Kennial Jacobs.

**5. The overall strength of the prosecution's case**

The prosecution's case was extremely weak without the testimony of both Kennial Jacobs and Alicia Green. Again, their combined testimony was so important that a conviction could not have been had without it.

The trial court's error in limiting Appellant's right to cross examine Kennial Jacobs with respect to pending felony criminal charges was harmful beyond a reasonable doubt. This Honorable Court should reverse the Judgment of the trial court and order a new trial for Appellant.

**ISSUE NO. 5:** **The trial court erred when it admitted an audiotape tape allegedly containing a telephone conversation between Alicia Green and Appellant because a proper foundation for its admissibility was not established**

**1. Standard of Review**

The determination of admissibility of evidence is within the sound discretion of the trial court, and will not be reversed on appeal unless a clear abuse of discretion is shown. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex. Crim. App. 1979); *Werner v. State,* 711 S.W.2d 639, 643 (Tex. Crim. App. 1986; *Johnson v. State,* 698 S.W.2d 154, 160 (Tex. Crim. App. 1985), *cert. denied,* 107 S.Ct. 239 (1986). An appellate court should not find such an abuse of discretion if the trial court's ruling was within the "zone of reasonable disagreement." *Santellan v. State,* 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

**2. Argument and Analysis**

The State did not establish a complete foundation for the admission of the recorded telephone conversation between Appellant and Alicia Green that was admitted into evidence as State's Exhibit 54. (R.R. Vol. 5 pgs. 133-34). Accordingly, the trial court should not have admitted the recording.

Texas Rule of Evidence 901 provides, in relevant part:

**Authenticating or Identifying Evidence**

(a) *In General.* To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) *Examples.* The following are examples only - not a complete list - of evidence that satisfies the requirement:

    (1) *Testimony of a Witness with Knowledge.* Testimony that an item is what it is claimed to be.

    . . .

    (5) *Opinion About a Voice.* An opinion identifying a person's voice - whether heard firsthand or through mechanical or electronic transmission or

recording - based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

           (6)    ***Evidence About a Telephone Conversation.***    For a telephone conversation, evidence that a call was made to the number assigned at the time to:

           (A)     a particular person, if circumstances, including self-identification, show that the person answering was the one called; or

           (B)     a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone.

To authenticate the recorded telephone conversation, the State offered the testimony of Chief Ronny Sharp of the Wake Village Police Department. (R.R. Vol. pgs. 64-65). Chief Sharp testified on direct that he was aware of the recording (R.R. Vol. 5 pg. 64); he had listened to the recording (R.R. Vol. 5 pg. 64); that the recording was prepared on a device capable of making an accurate recording (R.R. Vol. 5 pg. 65); the recording was an accurate copy of the conversation that took place between Alicia Green and Appellant (R.R. Vol. 5 pg. 65); and that it was his opinion that the voices were those of Alicia Green and Appellant. (R.R. Vol. 5 pg. 65).

Defense counsel took Chief Sharp on voir dire concerning the telephone recording, and Chief Sharp completely contradicted his own testimony given moments before by testifying that he had no idea whether the machine had made an accurate recording of the telephone conversation (R.R. Vol. 5 pg. 66); that he did not know if it was a complete copy of the telephone recording (R.R. Vol. 5 pg. 67); and that he did not know whether the telephone recording had been tampered with (R.R. Vol. 5 pg. 67).

The State failed to authenticate the recording through Chief Sharp under Texas Rule of Evidence 901. Chief Sharp was not a witness with personal knowledge, and he testified that he

did not know if the device recording the telephone call made an accurate recording, nor did he know if the the recording was complete or had been tampered with.

Furthermore, the State failed to show through either Chief Sharp or Alicia Green, as required by Texas Rule of Evidence 901(b)(6), that the phone number called was assigned to Appellant.

Although Alicia Green testified that she called Appellant, that the telephone recording had not been tampered with, and the voices on the telephone recording were those of herself and Appellant (R.R. Vol. 5 pgs. 132-33), her testimony must be viewed with suspicion because she was an accomplice as a matter of law and, therefore, inherently untrustworthy. Appellant asserts that, as discussed *supra,* there should have been sufficient corroborating evidence to link Appellant to the recorded telephone conversation other than Alicia Green's testimony. There is simply no reliable corroborating evidence that gives adequate assurance that the telephone recording was accurate, unedited, and complete.

For these reasons, the State did not establish the proper foundation for admission of the telephone recording.

An error must affect the substantial rights of the accused to be harmful. *See* TEX. R. APP. P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266 (Tex. Crim. App. 1997)(citing TEX. R. APP. P. 44.2(b)). Alternatively, error is harmless if the error "did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). The Appellant does not bear the burden to establish such harmful error. *Schutz v. State,* 63 S.W.3d 442, 444 (Tex. Crim. App. 2001); *Johnson v. State,* 43 S.W.3d 1, 4 (Tex. Crim.

App. 2001). Rather, it is the responsibility of the appellate court to assess harm after reviewing the record. *Schutz,* 63 S.W.3d at 444; *Johnson,* 43 S.W.3d at 4.

The telephone conversation was harmful beyond a reasonable doubt to Appellant. The implication was that Appellant clearly participated in the offense, otherwise Alicia Green would not have been calling him and telling him to "get ghost". The telephone conversation obviously played a large part in the jury's deliberations because they were brought back into the courtroom during deliberations where the telephone recording was played for them yet again (R.R. Vol. 6 pgs. 43-44). For these reasons, admission of the telephone recording into evidence was harmful to Appellant's substantial rights and contributed to his conviction.

This Honorable Court should reverse the trial court's judgment and order a new trial for Appellant.

**ISSUE NO. 6. Appellant suffered egregious harm because the jury charge failed to properly apply the accomplice witness instruction in the abstract portion of the charge to the facts of the case in the application portion of the charge**

**1.      Standard of Review**

The purpose of the trial judge's jury charge is to instruct the jurors on all of the law applicable to the case. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense." *Dinkins v. State,* 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). In examining the charge for possible error, reviewing courts "must examine the charge as a whole instead of a series of isolated and unrelated statements." *Id.*

The application paragraph is that portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the

indictment allegations. *See Gray v. State,* 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004)("It is not enough for the charge to merely incorporate the allegation in the charging instrument. Instead, it must also apply the law to the facts adduced at trial. This is because '[t]he jury must be instructed under what circumstances they should convict, or under what circumstances they should acquit.' Jury charges which fail to apply the law to the facts adduced at trial are erroneous."). Because that paragraph specifies the factual circumstances under which the jury should convict or acquit, it is the "heart and soul" of the jury charge. *Id.* at 128.

When a definition or instruction on a theory of law . . . is given in the abstract portion of the charge, the application paragraph must 1) specify "all of the conditions to be met before a conviction under such theory is authorized (*Plata v. State,* 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State,* 953 S.W.2d 234 (Tex. Crim. App. 1997); 2) authorize "a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers" (*Id.*); or 3) "contain some logically consistent combination of such paragraphs." *Id.*

Appellate review of jury charge error is a two-step process. *Abdnor,* 871 S.W.2d at 731. First, the Court decides whether error occurred. *Id.* Next, the Court evaluates whether sufficient actual harm resulted from the error to require reversal. *Id.* at 731-32; *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). If error exists and a timely objection was made at trial, the Court must determine whether the charge error resulted in "some harm" to Appellant. *Abdnor,* 871 S.W.2d at 732; see also *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If the error is instead urged for the first time on appeal, the Court must determine whether the charge error resulted in "egregious harm" to Appellant. *Abdnor,* 871 S.W.2d at 732; *Almanza,* 686 S.W.2d at 171.

### 2. Argument and Analysis

**(a)    The jury charge was erroneous because it failed to specifically instruct the jury regarding how it was to apply the accomplice witness instructions to the facts of the case, and the application paragraph's reference to "bearing in mind the foregoing instructions" was insufficient to meet that burden**

The jury charge, in its abstract portion, defined "accomplice" and also instructed the jury that Alicia Green was an "accomplice as a matter of law." (R.R. Vol. 6 pg. 13).

However, the jury charge was erroneous because the application portion of the jury charge failed to specifically instruct the jury how it was to consider and apply the accomplice testimony and any corroborative evidence to Appellant's alleged actions. (R.R. Vol. 6 pgs. 14-15).

The jury charge, as a part of the application paragraph, should have incorporated into the instructions that the jury must **acquit** Appellant if it: 1) believed Alicia Green's testimony, and that her testimony established Appellant's guilt as charged in the indictment, but it did not believe her testimony was sufficiently corroborated; or 2) if it did not believe Alicia Green's testimony, and her testimony did not show Appellant's guilt as charged in the indictment, and her testimony was corroborated and tended to connect Appellant with the offense charged.

The simple instruction that, in assessing and applying the law to the facts of the case, the jury should "bear in mind the foregoing instructions" is insufficient to adequately instruct it in this complex accomplice witness case.

**(b)    Appellant suffered egregious harm because Alicia Green was the State's star witness, and a conviction absent her testimony would not have been possible**

Appellant did not object to the complained of error in Issue No. 6.

In determining whether there has been egregious harm, the reviewing court should consider (a) the jury charge as a whole; (b) the state of the evidence, including contested issues and the weight of the probative evidence; (c) arguments of counsel, and (d) any other relevant information in the record. *Sanchez v. State,* 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Taylor v. State,* 146 S.W.3d 801, 310 (Tex. App. - Texarkana 2004, pet. ref'd). Direct evidence of harm is not required to establish egregious harm. *Castillo-Fuentes v. State,* 707 S.W.2d 559, 563 n.2 (Tex. Crim. App. 1986); *Hill v. State,* 30 S.W.3d 505, 507-08 (Tex. App. - Texarkana 2000, no pet.).

Setting aside the testimony of Alicia Green, the alleged corroborating evidence in this case (all of which was contested) is weak and does not sufficiently connect Appellant to the alleged offense nor to the underlying offense of robbery. Mr. Robinson was unable to identify Appellant as his attacker, and his statements to Mr. Frost, the police officers, and Mr. Guyton did not provide sufficient information to establish any possible underlying motive because they were vague and subject to any of a number of interpretations. Mr. Robinson's statements did not shed any light on exactly what transpired inside 1024 Brown Street, nor did they enlighten the jury about the specific intent of the actor or actors who shot him and when that intent was formed.

The other witnesses were, likewise, unable to identify Appellant as having been involved in the crime. Only Kennial Jacobs testified that she picked up Alicia Green and Appellant in another part of Wake Village on the same night as the offense.

Indeed, Alicia Green is the only person who made Appellant's conviction possible, and Appellant's trial counsel argued the insufficiency of the evidence.

The jury charge is a confusing morass of definitions and instructions along with various and changing *mens rea's* depending on which part of the jury charge one is reading. The

application paragraph makes no specific reference to the "accomplice" portion of the jury charge and it does not instruct the jury on how to apply the "accomplice" instructions to the facts of the case.

Appellant was egregiously harmed by the omission in the application paragraph of any specific instructions regarding how to apply the "accomplice" instructions to the facts of the case and what the jury must find or not find to either convict or acquit Appellant in terms of the "accomplice" instruction.

This Honorable Court should reverse the judgment of the trial court and remand the case for a new trial.

## PRAYER

**WHERFORE,** premises considered, Kennedy Dewayne Riley respectfully requests that his conviction be reversed and judgment rendered in his favor, that the conviction be reversed and a new trial granted, or for such other and further relief to which he may be entitled.

Respectfully submitted,

/s/ Clint E. Allen
Attorney at Law
Texas Bar No. 24012206
207 East Hiram Street
Atlanta, Texas 75551
Tel. 903-799-7779
Fax 903-799-7771
clint@clintallenlaw.com

Attorney for Appellant

## CERTIFICATE OF SERVICE

This is to certify that on November 16, 2015, a true and correct copy of the above and foregoing Brief of Appellant has been forwarded via U.S. mail to the following:

Ms. Lauren Sutton
Assistant Criminal District Attorney
601 Main Street
Texarkana, Texas 75501

Kennedy Riley, #1885338
Mark W. Stiles Unit
3060 FM 3514
Beaumont, Texas 77705

/s/ Clint E. Allen

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, the undersigned counsel certifies that this Brief contains 13,364 words (less than 15,000) based upon the word count function of the word processing software used to prepare the Brief.

/s/ Clint E. Allen